# THOMAS GOULD v. CITY OF ST. PAUL.[1]

January 3, 1913.

Nos. 17,744—(122).

**Local assessment lien — state tax lien.**

Chapter 200, Laws 1905, declaring local assessment liens of certain municipalities, where proceedings for the enforcement of the same are conducted independently of the delinquent tax proceedings of the state, of equal rank with the state tax lien, construed, and *held* to apply to assessment and general tax liens accruing the same year.

**Same — priority of lien.**

General state tax or local assessment liens levied in a particular year are paramount and superior to similar liens of prior years.

**Merger of lien in perfected title.**

In the absence of a statute to the contrary, general tax and local assessment liens are merged and extinguished on the perfection of a title under the same.

**Tenants in common.**

Where title under a state tax lien is perfected by an individual, and title under a local assessment lien is perfected by the municipality levying the assessment, both titles being so perfected in separate and independent proceedings, and the liens being under the provisions of chapter 200, Laws 1905, of equal rank, the parties become by operation of law joint owners of the property.

**Action in partition may be maintained.**

An action in partition may be maintained against the city of St. Paul to determine rights in property the title to which was acquired as above stated.

1 Reported in 139 N. W. 293.

Note.—The question of the superiority of lien for special assessments over lien for taxes is treated in a note in 30 L.R.A.(N.S.) 768.

Action in the district court for Ramsey county for partition of a certain city lot. The answer alleged that in October, 1908, plaintiff began a proceeding to register title to the real estate and defendant was required to answer the application, which it did, and the proceeding was still pending. Further answering defendant alleged that the court had no jurisdiction of the subject-matter of the action. The case was tried before Dickson, J., who made findings and as conclusion of law found that plaintiff was entitled to no relief, and that defendant city was entitled to a valid lien upon the lot for $13.47 and interest and had a further lien for $64.29 and interest. From an order denying his motion for a new trial, plaintiff appealed. Reversed and new trial granted.

*William G. White,* for appellant.

*O. H. O'Neill* and *J. P. Kyle,* for respondent.

BROWN, J.

Action for the partition of real property, in which defendant prevailed on the trial below, and plaintiff appealed from an order denying a new trial. The short facts are as follows:

The property involved in the action is lot 14 in block 51, Lawton Bros. Addition to St. Paul. It was sold by the state in November, 1907, in forfeited tax proceedings, for the taxes remaining delinquent for the years 1891, 1892, and 1901 to 1906, inclusive. A forfeited tax deed was duly issued to the National Bond & Surety Company, a corporation, the purchaser at the sale. No redemption was ever made, though proper notice was given, and plaintiff has succeeded to the title and rights of the Surety Company. By a subsequent action to determine adverse claims, plaintiff's title was confirmed as to the record owner and all unknown persons having or claiming any title or interest therein. The city of St. Paul, defendant herein, was not a party to that action.

In the year 1901 the defendant, city of St. Paul, acting through its board of public works, and pursuant to the provisions of its charter, duly levied an assessment against the property for the amount of benefits assessed against it in local improvement proceedings.

A warrant for the collection of the assessment was duly issued to the city treasurer on May 17, 1902. The assessment was not paid and became delinquent. Such proceedings were thereafter had, as required by law, that judgment was duly rendered against the property for the amount of the assessment, with interest and costs, and the property was subsequently sold at a sale held for that purpose on November 8, 1902. No bidders appearing, the property was duly struck off to the city, and a certificate of sale in due form duly issued. No redemption was ever made, though due notice was given, and the city became the owner of the property, or the owner and holder of such rights as accrued from the sale of the property under the facts stated.

Local assessment proceedings in the city of St. Paul, including the levy, the collection, and proceedings for the enforcement of delinquent assessments, are conducted through the administrative city officers, independently of proceedings by the state for the enforcement of delinquent general state taxes. In other municipalities of the state, the proceedings from the point of delinquency are consolidated; the unpaid assessments being certified to the county auditor, and by him included in the general delinquent tax proceedings. Some confusion has heretofore arisen in respect to rights acquired under the separate proceedings, particularly as to priority of liens. It was held in White v. Knowlton, 84 Minn. 141, 86 N. W. 755, that the lien of the city was subordinate to the lien of the state for general taxes. For the purpose of preventing further conflict of rights naturally resulting from the independent proceedings, and to protect the interests of the city, the legislature enacted chapter 200, p. 255, Laws 1905. For present purposes, it is sufficient to say that by that statute the lien of the local assessment and the lien for the general taxes were declared of equal rank.

In this case plaintiff's title springs from the general tax, and defendant's from the local assessment, the liens of which were, under the statute referred to, of equal rank, neither being superior to the other. The contention of plaintiff, and this is the theory and basis of his action, is that, since plaintiff and defendant each acquired an

independent title to the property pursuant to the sale in the separate proceedings, and upon distinct liens of equal rank, they became joint owners of the property, or, as otherwise expressed, tenants in common, and that partition proceedings may be maintained to determine the relative rights of the respective parties. The trial court rejected this contention, holding that the rights of the city were paramount and superior to those acquired by plaintiff through the general tax proceedings. Whether the learned judge below was correct in this conclusion presents the substantial question on this appeal.

1. For the purpose of a clear understanding of the case and the question involved, we here set out the statute, a construction of which determines the issue presented. The statute is as follows:

"That all assessments upon real property for local improvements made or levied by the proper authorities of any city in the state, * * * shall be a paramount lien upon the land upon which they are imposed from the date of the warrant issued for the collection thereof, and of equal rank with the lien of the state for taxes which have been or may be levied upon said property under the general laws of the state; and that the general rules of law as to priority of tax liens shall apply equally to the liens of such assessments and to such liens for general taxes, with the same force and effect as though all of the liens aforesaid and all of the taxes and assessments aforesaid, were of the same general character and imposed for the same purpose and by the same authority, without regard to the priority in point of time of the attaching of either of said liens, and a sale or perfecting title under either shall not bar or extinguish the other."

2. While the statute in broad language refers to all local assessment liens and all general tax liens, and declares that they shall be of equal rank, there must necessarily be a limitation upon the particular liens the legislature intended to deal with. It cannot well be said that the lawmakers intended to declare that assessment liens attached to property in a particular year should remain either paramount or upon an equality with like liens attaching during subsequent years, for such a construction would be at variance with the

clause, found in the body of the statute, that the general rules of law in respect to the priority of tax liens shall apply to the local assessment lien. The rule applied to all other liens is that the first in point of time takes priority, while the rule is the reverse in tax liens. As to such liens, "the last shall be first, and the first last." Cooley, Taxation (3d ed.) 875. It is clear that the legislature intended this rule to continue and be applicable to assessment liens and rights accruing thereunder.

It follows that, to give effect to the statute, it must be construed as applying, when declaring the equal rank of assessment and general tax liens, to such as arise from taxes or assessments levied during a particular year. So that, while the two liens for a particular year are of equal rank, those arising during subsequent years, though as between the two concurrent, are paramount and superior to those attaching during preceding years, and must be paid by the prior lienholder to protect his rights. In this view it is clear in the case at bar that the assessments made by the city in the year 1908, as disclosed by the findings of the court, are superior to the rights of plaintiff under the title held by him for taxes for preceding years. If title under the 1908 assessment be perfected, plaintiff's title is entirely cut out. In other words, there is no equality between the tax liens under which plaintiffs claim title and the city assessments made in 1908. This was, as we understand the record, the view of the trial court, and we sustain it.

3. Plaintiff's title to the land is founded upon a forfeited tax sale, and for delinquent state taxes for several years, namely, 1891, 1892, and 1901 to 1906, inclusive. Defendant's title is founded upon a local assessment for the year 1902. The general tax lien of 1902, included in plaintiff's title, and the city assessment for the same year, were under the statute referred to of equal rank, and the question to be determined is the status and rights of the parties in a situation like that here presented, where the holders of the separate liens have foreclosed the same and perfected the title thereunder. It is the contention of plaintiff that they became joint owners of the land, while the city contends that its title is superior to that of plaintiff. The theory in support of the city's contention is that the equality de-

clared by the statute ceased when the state parted with its rights to a private person at the forfeited sale, and that plaintiff, successor of the purchaser at that sale, took his title subject to the lien of the local assessment. We are unable to sustain that view of the law. The position of the city and of the trial court would be entirely correct, had the assessment in question remained in the form of a lien, and so continued after plaintiff's title was perfected. As a lien it could only be discharged by payment. But did such lien continue?

Tax liens, as well as those arising from local improvement proceedings, are purely of statutory creation. Their duration, force or effect is controlled entirely by the statutes creating them. In all respects not covered by statute, the rules and principles of the common law prevail. Under section 975, R. L. 1905, general taxes are declared a "perpetual" lien from May 1 of the year in which they are levied until paid. The charter of the city of St. Paul (section 32, tit. 3) provides that all local assessments "shall be a paramount lien on the real estate on which the same may be imposed, from the date of the warrant issued for the collection thereof." Generally speaking, a lien of this character, as well as other liens upon specific property, cease and terminate upon an appropriation, in due proceedings, of the property to the payment of the debt. And it has often been held, in the absence of a statute to the contrary, that tax liens, under the system of foreclosure in force in this state, namely, by judgment of court and sale of the property, become merged in the judgment, and are finally extinguished and discharged upon a valid sale of the property. State v. Bellin, 79 Minn. 131, 81 N. W. 763; State v. Johnson, 83 Minn. 496, 86 N. W. 610; Schneider v. City, 135 Mich. 570, 98 N. W. 258; 37 Cyc. 1150. The lien does not, in the absence of some statute so providing, survive or continue after the foreclosure thereof in the manner provided by law, namely, by extinguishing the right of redemption. Byers v. Minnesota Commercial Loan Co., 118 Minn. 266, 136 N. W. 880; 2 Cooley, Taxation (3d ed.) 1017. Such was the rule as respects state tax liens prior to the insertion of the word "perpetual" in the tax lien statute by the amendment of 1902, now section 975, R. L. 1905; and whether that amendment has changed the rule we need not stop to consider. Rochford

120 M.—12.

v. Fleming, 10 S. D. 24, 71 N. W. 317. The charter of the city of St. Paul contains no such language, and the general rule as to the duration of such liens controls.

In the assessment proceedings in question, judgment for the assessment against the property was duly rendered, and at the subsequent sale thereunder the city became the purchaser of the property, thereafter terminating the right of redemption by proper notice as provided for by the charter. Within the rule stated, this completely extinguished the lien, and vested in the city the ownership of the property. The lien was gone, and in its place the city was the owner of the property. Schneider v. City, supra; 2 Page & Jones, Taxation by Special Assessment, 1194. Defendant is not, therefore, in the position of a lienholder, and cannot prevail upon the theory that it has a paramount lien. The clause in the statute heretofore quoted in full, declaring the assessment lien paramount to all other claims or liens, was intended and must be construed to apply to all private claims or liens upon the specific property, and not to bar a purchaser from the state from the position of equality with one who acquires title from the city through the local assessment proceeding.

4. What, then, are the rights of the parties? It is unnecessary to refer particularly to the various provisions of the city charter defining or granting rights to purchasers at sales under assessment proceedings. It is sufficient to say that all purchasers at sales are, after the time of redemption, vested with the absolute title to the property. The city, as such purchaser, stands in the same position as a private person. It acquires the same rights and occupies no superior position. 2 Cooley, Taxation (3d ed.) 978; Connecticut v. Wood, 115 Mich. 444, 74 N. W. 656; Dyke v. Whyte, 17 Colo. 296, 29 Pac. 128. The title acquired by the city accrued on the eighth day of November, 1907, the time of redemption having expired on that day. The forfeited tax sale under which plaintiff acquired title was had on November 25, 1907, or 17 days after the title of the city had become absolute on the failure of the owner to redeem. Plaintiff's title became absolute on February 20, 1908, and was in fact founded upon a tax lien of equal rank with the lien made the foundation of defendant's title. Under the statute referred to, the perfection

of title under the assessment did not bar or extinguish the state's lien. The statute so expressly provides. Such being the situation, it is clear that the state was within its rights when it proceeded subsequently to the date when title became vested in the city under the assessment lien to sell the property in the forfeited tax proceeding. It is equally clear, since the perfection of title in the city was without prejudice to the rights of the state, that the forfeited sale vested in the purchaser, after the expiration of the time for redemption, title to the property.

Plaintiff, as such purchaser, either acquired title, or he acquired nothing at all. He could not redeem from the city assessment sale, for the time of redemption therefrom had expired at the date of his purchase at the forfeited sale. And even if the case had been one where he could have redeemed from the city the law does not impose that as a condition to the completion of the title under his purchase. The foundation of his title was of equal rank with the foundation of the assessment title, and both must stand or fall together. If the title held by the city had been acquired by an individual, there could be no question that the relation of a joint tenancy would have arisen by operation of law. And since the city acquired no rights which would not have passed to an individual, the same result follows. The city and plaintiff were joint or concurrent lienholders, the separate foreclosure of which vested in them separate, independent, yet common, rights in and to the property as a whole.

The theory of the city that rights of priority arise in favor of the city or state, upon a sale in foreclosure by either, cannot be adopted without reading into the statute a provision not now found there, and work a practical nullification of the intention of the statutes to preserve and protect the rights and interests of both. Both the parties here before the court have perfected title to the property, neither can redeem from the other, and unless a joint ownership arises from the facts stated one or the other must be held without right. If the case was reduced to this situation, the city would fail; for the title of plaintiff was subsequent in point of time, and in part upon liens for years subsequent to the assessment lien, and therefore superior to that lien. The legislature did not intend that result, but did intend,

as we conceive the purpose of the legislation, to place both upon an equal footing. Each acquired certain rights under the sales, and it was competent for the state to transfer those arising from the forfeited sale to plaintiff, and plaintiff became thereby upon an equality with the city. The parties are therefore entitled to share ratably in the proceeds of the property. Stiles v. Galbreath, 69 N. J. Eq. 222, 60 Atl. 224.

5. The other questions raised and discussed in the briefs do not require extended mention. There can be no serious question of the liability of a municipality holding title to real property in common with an individual to a suit in partition. So far as concerns the property rights of a municipal corporation, the general rules and principles of law apply to controversies between itself and an individual, the same as between individuals. Nor do we apprehend any particular difficulty in the protection by the trial court of the interests of the municipality in cases of this kind. The whole matter of the sale and distribution of the proceeds is within the control of the court, and it goes without saying that a fraudulent or collusive sale will readily be detected, and confirmation refused. And, finally, if the statute in question, as here construed and applied, is likely to jeopardize the interests of the city, it may be amended so as to avoid that result. As enacted, we discover no way of applying it, consistent with its language, except as here indicated. Connecticut v. Wood, 115 Mich. 444, 74 N. W. 656. The complaint states a cause of action for the relief demanded.

Order reversed, and new trial granted.