## Pentz v. Flynn et al.

*Pentz & Pentz,* for plaintiff; *Liveright & Smith,* for defendant.

SMITH, P. J., August 10, 1934.—The question before the court arises on preliminary objections to a bill in equity for a partition. The bill in equity avers that the property was owned by the plaintiff and the three respondents other than Clearfield County, each owning a one-fourth interest in the real estate involved. The county is joined as a respondent by reason of the share of two of the respondents, John M. Flynn and James R. Brahaney, having been sold at tax sale by the County Treasurer to Clearfield County for taxes for 1930 and 1931. The answer was filed on July 16, 1934, which was after the 2-years' redemption period had expired without any redemption having occurred, and by reason thereof the title of the county acquired at the tax sale had become absolute. The objections raised in the answer all revolve about the question whether or not a proceeding in partition may be had against the county in view of there

being no express statutory authority for making a county a party to a partition proceeding, and in view of the statutes expressly providing certain procedure whereby county commissioners may divest a county of titles acquired at tax sales.

It is urged on behalf of the county that since it is a governmental subdivision whose powers are limited by statute, and since there is no statute which expressly authorizes it to become a party plaintiff or defendant in partition proceedings, the equity court does not have jurisdiction to make a binding decree that partition shall be had of these premises. It is further pointed out that there is no provision in the law whereby the county can protect itself, as may other parties to such proceedings, by either taking a purpart of the partitioned premises at a valuation, paying owelty, or purchasing at public or private sale purparts or the whole of the partitioned tract. It is further pointed out that the statutes expressly provide several methods of procedure whereby the county may dispose of titles which it acquires by reason of its duty to bid in properties exposed at treasurer's sales for taxes, upon which no private persons bid sufficient to cover the taxes and costs; such procedure being either by way of a public commissioners' sale after due advertisement and other proceedings, or upon petition to the court, due notice to the parties, etc., under recent legislation, particularly the Acts of May 25, 1933, P. L. 1018 and 1019. It is therefore urged that to permit the partition proceedings to go forward so far as concerns the county's portion of the title, would deprive it of its property without due process of law.

On behalf of the complainant it is urged that the fact that two of the four interests in this property have, by reason of default in payment of taxes, passed to the ownership of the county, should not tie the hands of the other owners, and that they should not be deprived of their right to have a partition of this property, which would unquestionably exist if these shares had not passed to the county's ownership.

At the argument both counsel conceded their inability to find any decisions in this State on the question involved. The question appears to be one of reconciling the conflicting operation of two well established broad rules of public policy and law; the one being the rule that the alienability of property is to be favored, partition proceedings being adapted to the purpose of furthering such alienability and bringing property into use instead of allowing it to remain idle because of differences of opinion among owners; and the other being the rule which strictly prescribes by statute the powers and authority of municipal subdivisions of the State. The right to have partition of property is one of the long-standing rules of property ownership under which persons acquire and continue to hold ownership of real estate in common with other persons, and its existence and the right to resort to it is necessary to prevent such ownership from becoming in many cases entirely useless and burdensome. Without it one tenant in common could, by his unwillingness or inability to act, entirely deprive his cotenants of the benefits of ownership. It seems only reasonable, therefore, that the right of partition should not be lost merely because one of the tenants in common is under some legal disability. The disability with respect to the ownership of the two shares here is one which cannot be regarded as the fault of the complainant, and in our opinion it would be depriving him of one of the ordinary incidents of his ownership if he were not allowed to have partition of this property. We find a decision in another jurisdiction which seems squarely to answer the question involved: Gould v. City of St. Paul,

120 Minn. 172, 139 N. W. 293; where the municipality had likewise acquired a fractional interest in a property by tax sale, and partition was sought by an individual co-owner. The court there said in part, at page 296:

"There can be no serious question of the liability of a municipality holding title to real property in common with an individual to a suit in partition. So far as concerns the property rights of a municipal corporation, the general rules and principles of law apply to controversies between itself and an individual, the same as between individuals. Nor do we apprehend any particular difficulty in the protection by the trial court of the interests of the municipality in cases of this kind. The whole matter of the sale and distribution of the proceeds is within the control of the court, and it goes without saying that a fraudulent or collusive sale will readily be detected, and confirmation refused."

To the same effect is 47 C. J. 354, as follows. "As cotenants of every class . . ., tenants in common . . . may maintain actions for partition, irrespective of the mode of creation of the cotenancy, so all classes of cotenants, irrespective of the mode by which the tenancy was created, may be sued for partition; and this is true, although the cotenant is an artificial person such as a municipality, holding title to real property in common with an individual."

There can be no question that the county is under serious disability in this case. In the normal course of a partition proceeding the various co-owners must protect themselves either by offering to take purparts, which may involve their becoming charged with owelty, or by bidding at a sale of the property. The county authorities have no statutory power to take such steps or to speculate in any way on the ownership of property or the outcome of a sale. Forced public sales notoriously fail on many occasions to bring adequate prices, particularly in times of widespread depression such as exist today. The exposing of the property to public sale, while fair to individuals, may therefore be extremely unfair to the county, and might result in the loss to the taxpayers of the taxes, to secure which is the only purpose of the compulsory acquisition of title by the county. In our view the equity court which takes jurisdiction of this partition proceeding has full power to protect any of the parties who are under disabilities, so that the exercise of the rights asserted will not produce inequitable results. We think, therefore, that the county is entitled to be protected against its inability to protect itself by bidding. This protection should be afforded by providing that if the property comes to a public sale, it shall not be sold for an amount which would fail to pay to the county the taxes and costs for which the property was held, or if sold for a less price than would produce that result, then such other safeguards or limitations should be placed thereon as may seem proper. We do not think the extent or form of such safeguards can be stated at this time, as it would depend largely upon the valuation to be placed on the premises in the course of the partition proceeding. It must also be borne in mind that the county would not, in the course of its normal procedure of exposing these lands to public sale at some later date, necessarily obtain the amount of the taxes and costs for which the title is held. In fact we believe the usual experience of the county commissioners with such sales is to derive less from their public sale of such titles than the taxes and costs involve. In general our view at this time is that if and when a decree of sale shall be made in this proceeding, the court having then before it the facts as to the value of the property and the master's report with reference thereto, may include in the order of sale such limitations as to price and any other matters which may then appear proper for the protection of the county's interests. Similar protection may be

afforded if required in connection with any other steps in the proceeding, as the offering of purparts to the owners at a valuation, etc.

The objections raised on constitutional questions need not be specifically discussed, as in view of the opinion above expressed the procedure would be according to due process of law and therefore not in violation of any of the constitutional guaranties referred to.

### Order

Now, August 10, 1934, in accordance with the opinion filed herewith, the objections raised in the answer filed are overruled, and it is directed that the complainant be decreed to have partition of the property. The respondent is hereby allowed a period of 15 days for the filing of such further answer as it may desire. The entering of a decree pro confesso in accordance with the præcipe heretofore filed is suspended pending the filing of such answer. After the filing of such additional answer or the expiration of 15 days as aforesaid, leave is granted to the complainant to submit to the court such form of decree, if any, as he may then be entitled to have in accordance with the pleadings, the equity rules and this opinion.