BOARD OF COUNTY COM'RS OF SEMINOLE COUNTY v. CITY OF WEWOKA ex rel. NORTH et al.

No. 30042. June 30, 1942.

*127 P. 2d 826.*

J. M. Huser, Former County Atty., Tom Biggers, Present County Atty., and A. C. Kidd, Asst. County Atty., all of Wewoka, for plaintiff in error.

Geo. C. Crump, H. W. Carver, and A. L. Deaton, all of Wewoka, for defendants in error.

HURST, J. This case involves the respective rights of the holder of special assessment lien for street improvements and the county, holder of a resale tax deed, covering a lot in the city of Wewoka.

The material facts are these: The bonds sought to be foreclosed were issued April 26, 1924. The last three installments due for the years 1931, 1932, and 1933 not being paid, the owners of the bonds commenced this action on May 13, 1937, to foreclose the lien, then amounting to $249.22. At the 1939 tax resale, while said clause was still pending, the property was sold to Seminole county for the delinquent ad valorem taxes for the years 1930 to 1938, both inclusive, for the sum of $295.56. Thereafter, and on May 16, 1940, an amendment to the petition was filed making the board of county commissioners of Seminole county a party defendant. The delinquent paving assessments were not referred to in the notices or other proceedings in connection with the original sale or the resale. The trial court entered judgment foreclosing the special assessment lien, and in effect holding that the lien is superior to the title of the county. From that judgment the board of county commissioners appeals. The former owner, A. Thelma Johnson, does not appeal.

While the board argues the case under six separate propositions, we think but three questions are presented, (1) whether the statute making the special assessment lien coequal with the ad valorem tax lien is constitutional, (2) the effect on the special assessment lien of the failure of the county treasurer to advertise and sell the property for the delinquent special assessments on the resale to the county, and (3) the effect

of the resale of the property to the county on the provision for coequality of the liens. These questions will be disposed of in the order stated.

1. 11 O. S. 1941 § 103 provides that the lien for special assessments for street improvement shall be "coequal with the lien of other taxes." This provision has been before this court before, and has been enforced, but we do not find where its constitutionality has previously been questioned. The board of county commissioners contends that it is violative of section 53, art. 5, and section 5, art. 10, of the State Constitution. Neither constitutional provision has to do with tax liens. As we pointed out in State v. Passmore, 189 Okla. 232, 115 P. 2d 120, 136 A. L. R. 324, "in the absence of constitutional provisions to the contrary, liens for taxes, their duration, extent and priority are purely statutory." The special assessments involved in this case were levied under a statute enacted under specific authority contained in section 7, art. 10. of the State Constitution. We hold that the statute making the two liens coequal does not have the effect of surrendering, suspending, or contracting away the power of taxation in violation of the provisions of section 5, art. 10, nor does it have the effect of "releasing or extinguishing, in whole or in part," ad valorem tax liabilities contrary to the provisions of section 53, art. 5, as construed in Ivester v. State, 183 Okla. 519, 83 P. 2d 193.

2. The next question for decision is the effect on the special assessment lien of the failure of the county treasurer to sell the property to satisfy both liens and to include in the notice of the original sale and the notice of the resale any reference to the amount due for special assessments. That the treasurer had the right to sell the property to satisfy both liens is settled by Oklahoma City v. Vahlberg, 185 Okla. 28, 89 P. 2d 962, where we analyzed many of the decisions discussed by the parties in the instant case, and came to the conclusion that delinquent special assessments are "delinquent taxes" as that term is used

in 11 O. S. 1941 § 106, and are to be collected as other taxes on real estate are collected. It is clear that under section 106 it is the duty of the city or town clerk to certify to the county treasurer the delinquent special assessments, and it is likewise the duty of the county treasurer to place such assessment upon the next "November delinquent tax list of the same year prepared by the treasurer of said county" and to collect the same "as other delinquent taxes are collected." Failure of the county treasurer to perform this duty has brought about the problem presented in the instant case.

The statutes provide two cumulative remedies for the foreclosure of the special assessment lien: (1) Under 11 O. S. 1941 § 107, any bondholder may foreclose said lien by a special class action, but in such an action the lien for ad valorem taxes cannot be affected prior to the resale of the property to the county; and (2) the county treasurer may foreclose the special assessment lien by sale of the property to satisfy the same at the regular tax sale and resale, and at such resale both liens (the one for special assessments certified to him and the one for ad valorem taxes) are extinguished if the property is advertised and sold to satisfy both. Oklahoma City v. Vahlberg, above.

The effect of a resale by the county treasurer was stated in section 12756, O. S. 1931, 68 O. S. A. § 415, as follows:

"And within said thirty (30) days the county treasurer shall execute, acknowledge and deliver to the purchaser or his assigns a deed conveying the real estate thus resold, which deed shall be upon a form to be prescribed by a (sic) State Examiner and Inspector, and which shall contain a provision expressly canceling and setting aside all delinquent taxes, penalties, interests and costs previously assessed or existing against said real estate, including ad valorem and outstanding individual and county tax sale certificates, and such deed shall vest in the purchaser and grantee of said real estate an absolute and perfect title in fee simple to said land."

On April 15, 1939, section 12756 was repealed by the 1939 resale law (article 31, ch. 66, S. L. 1939, 68 O. S. 1941 §§ 432-432p) and section 7 of that act (68 O. S. 1941 § 432f) fixes the effect of a resale tax deed as follows:

"The issuance of such deed shall effect the cancellation and setting aside of all delinquent taxes, assessments, penalties, and costs, previously assessed or existing against said real estate, and of all outstanding individual and county tax sale certificates; and shall vest in the grantee an absolute and perfect title in fee simple to said lands."

The effect of the two provisions is substantially the same. The 1939 act provides that "assessments" shall be canceled. Section 12756 did not specifically mention "assessments" as being canceled, yet in Oklahoma City v. Vahlberg, above, we held that the term "delinquent taxes" found in that section included delinquent special assessments certified to the county treasurer.

This court has consistently held that, despite the sweeping language contained in the quoted portion of section 12756, a resale of property does not affect the special assessment lien where the county treasurer does not purport to sell the property for the special assessments and does not include them in the notice of sale and resale. See McGrath v. Oklahoma City, 156 Okla. 34, 9 P. 2d 711; Settle v. Frakes, 156 Okla. 53, 9 P. 2d 768; Service Feed Co. v. City of Ardmore, 171 Okla. 155, 42 P. 2d 853. By these decisions full effect was given to the rule of equality of the two liens, and the provisions of 11 O. S. 1941, sections 103 and 12756, were harmonized and reconciled. We find nothing in the 1939 resale law to indicate that the Legislature intended to change the effect of the failure of the treasurer to advertise and sell the property at the resale to satisfy the special assessment lien.

We have examined the authorities from other states cited by the parties, but do not find them helpful, as they involve constitutional and statutory provisions materially different from

ours. We conclude that the special assessment lien was not extinguished by the resale of the property to Seminole county for the ad valorem taxes only.

3. The next question is whether, as argued by the bondholder, the special assessment lien is now superior to the claim of the county, and whether the equality of the liens has been affected adversely to the interests of the county. The bondholder relies on Schuman v. Board of County Commissioners, 184 Okla. 339, 87 P. 2d 151, which holds that a valid resale to the county extinguishes the ad valorem tax lien. The question here presented was not involved in that case. While it is true that the ad valorem tax lien is merged in the title acquired by the county, yet the Legislature did not intend such a sale to work a disadvantage to the county. Full effect can be given to the statutory rule of equality of the two liens only by holding that the lien for ad valorem taxes will be preserved as against the special assessment lien even after the county has acquired title to the property by resale for ad valorem taxes only.

We thus preserve the equality of the two liens, and reject the contention of each side that the lien of the other was extinguished by the resale to the county.

4. While the parties have not argued the question as to the distribution of the proceeds from the sale of the property under the judgment appealed from, yet it inheres in the decision.

11 O. S. 1941 § 107, which authorizes the foreclosure action by a bondholder, provides:

"Such judgment shall carry the costs of such action, together with the costs of such sale; and upon the payment of such judgment, the amount thereof, exclusive of such costs, shall be paid to the city or town treasurer and become a part of the separate special fund to pay such outstanding bonds and interest thereon. Such judgment shall provide for the sale of said real estate subject to existing general or ad valorem taxes and special assessments."

This provision indicates that the Legislature did not intend that the ad valorem tax lien shall be affected by the foreclosure proceedings. However, since the county now owns the fee-simple title, it may be sued and the claims of the county and the bondholders may be marshaled. See 19 O. S. 1941 §1; State v. Passmore, above. If the property does not sell for enough to satisfy both liens and the costs of foreclosure and sale by the present action, it follows that the costs must come out of the pro rata share of the sale price properly belonging to the bondholders, and no part of same shall be paid out of the share belonging to the county. In determining the share belonging to the county, the court costs and costs of sale in this proceeding are not to be considered. The bondholders, by electing to go the expensive route rather than to require or permit the property to be sold by the county treasurer to satisfy both liens, has caused the costs of this foreclosure proceeding to be incurred. And, of course, the only way a title contemplated by the statute, which will cancel and extinguish both the ad valorem tax lien and the special assessment lien, can be given is to sell the property at the same time to satisfy both liens, and this can be done only under the tax sale and resale laws, or as is being done in the instant case. Sale to satisfy only one lien subject to the other lien chills the sale and causes the property to bring an inadequate price.

We do not now determine whether a sale under a foreclosure judgment "subject to existing general or ad valorem taxes," as provided in section 107, above, prior to the sale of the property at resale to satisfy only the ad valorem taxes, would make the title of the purchaser at the foreclosure sale inferior to the ad valorem tax lien, since that question is not here presented.

The cause is remanded, with directions to cause the property to be sold in the manner provided by law, and to divide the proceeds of the sale in ac-

cordance with the views herein expressed.

WELCH, C. J., CORN, V. C. J., and OSBORN and BAYLESS, JJ., concur. DAVISON, J., dissents in part and concurs in part. RILEY and GIBSON, JJ., dissent. ARNOLD, J., absent.

———

GIBSON, J. (concurring in part and dissenting in part). I agree with paragraphs 1, 2 and 3 of the syllabus of the majority opinion, but not with the 4th paragraph thereof or that part of the opinion dealing therewith. The importance of the questions involved justify this expression of my views.

The bonds in question were issued in 1924 pursuant to chapter 173, S. L. 1923 (11 O. S. 1941 §§ 21 et seq.). The annual installments thereon remained unpaid for the years 1931, 1932, and 1933, and on May 13, 1937, plaintiffs instituted this action to foreclose the assessment lien as provided by said section 107. While the action was still pending the property was sold to county at resale in 1939 for the delinquent ad valorem taxes for 1930 to 1938, inclusive. Thereupon the county was made a party. It asserted title in fee simple under the resale tax deed, and that the same was superior to the lien of the plaintiffs.

The trial court rendered judgment foreclosing plaintiffs' lien and ordering distribution of the proceeds of the sale.

All parties look upon the judgment as holding the county's deed subject to and inferior to the plaintiffs' lien.

The special assessment lien in this case attached to the property in 1924. Said section 103 deals with the levying of the assessment, and provides further as follows:

"Such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the publication of the ordinance levying the same, co-equal with the lien of other taxes and prior and superior to all other liens against such lots or tracts of land, and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

The remedy pursued by plaintiffs and the procedure employed are not attacked. Said section 107, after authorizing this character of action for the foreclosure of the assessment lien as to delinquent annual installments thereon, provides:

"Such judgment shall provide for the sale of said real estate subject to existing general or ad valorem taxes and special assessments."

The county contends that the court erred in holding the special assessment lien superior to the resale tax deed; that such holding in effect made the special assessment lien superior to the lien of the ad valorem taxes upon which the resale deed was based; that such holding would be contrary to the coequality provision in the statute, and would place upon the statutes an interpretation wholly at variance with section 5, art. 10, of the Constitution, which provides that "the power of taxation shall never be surrendered, suspended, or contracted away." It is further contended that the resale deed passed to the county a fee-simple title free from every lien, including that of the plaintiffs, and that said section 103, so far as it would make the liens coequal, is actually violative of the above constitutional provision.

The statutes, though they purport to make the special assessment lien coequal with the lien of the ad valorem taxes, do not provide equal remedies for the bondholder and the county. The bondholder may by proper action foreclose his lien to the extent of the delinquent installments, but his action, as the Legislature plainly provided, cannot touch the ad valorem taxes assessed against the property, for, as provided by the Constitution, supra, the power of taxation shall never be surrendered,

suspended, or contracted away. The power of taxation necessarily includes the power of collection; and the power to sell property in satisfaction of taxes is necessary to full power to collect. Since special street improvements are not governmental functions, the constitutional provision contemplates any legislative attempt to give to special assessments priority or advantage in any way over ad valorem taxes, regardless of the time of assessment.

On the other hand, the county has a full and complete remedy by tax sale to foreclose not only its own lien but the lien of the bondholder as well, 11 O. S. 1941 § 106. That section, after defining certain duties of the city clerk with reference to the collection of special assessments, provides:

". . . and it shall be the duty of the city or town clerk, promptly after the date of maturity of any such installment and interest and on or before the fifteenth day of September in each year, to certify said installment and interest then due to the county treasurer of the county in which the city or town is located, which installment and interest shall be by said county treasurer placed upon the November delinquent tax list of the same year prepared by the treasurer of said county, and collected as other delinquent taxes are collected."

Thus it is seen that the right of the bondholder to enforce his lien on his own initiative is not as full and complete as that of the county to collect its own taxes. The county can foreclose the bondholder's claims, but the bondholder cannot foreclose the county's. And this I gather from an interpretation of the provisions of the above sections, which were a part of a single legislative act (H. B. 189, ch. 173, S. L. 1923).

The Legislature has not attempted to give to the bondholder an advantage over the county. The statute does not permit the bondholder in the foreclosure of his lien, or in any other way, to interfere with the county's taxing power. There is specific constitutional provision for the creation of special assessment liens (sec. 7, art. 10); and the statute making the lien of such assessments coequal with the lien of ad valorem taxes does not have the effect of surrendering, suspending, or authorizing the contracting away of the power of taxation. And said statute does not authorize the release or extinguishment of ad valorem tax liabilities contrary to section 53, art. 5, of the Constitution. Special assessment liens have been coequal with the ad valorem tax liens on the same property since the First Legislature (S. L. 1907-08, sec. 634, R. L. 1910; sec. 4609, C. O. S. 1921). The first statute was repealed in 1923 when section 103, supra, was enacted. We have heretofore recognized the provision as constitutional, and we should not at this late date hold otherwise. See Runnells v. Citizens' Nat. Bank, 157 Okla. 94, 11 P. 2d 173; Blythe v. Pratt, 171 Okla. 2, 41 P. 2d 895; Service Feed Co. v. City of Ardmore, 171 Okla. 155, 42 P. 2d 853.

The liens in favor of the county and the special assessment bondholder which by the statute are made coequal are for all delinquent ad valorem taxes for the collection of which the county may sell the property at resale and for all delinquent installments of special assessments subject to collection by resale or by foreclosure action.

In this I disagree with my associate, Mr. Justice DAVISON, in his opinion, "that each annual paving installment as it becomes delinquent carries with it a lien of equal priority with ad valorem taxes which become or would be delinquent and salable in the same year."

In circumstances such as we have here, I believe his view would destroy the coequality of liens provided by the statute.

The liens being coequal, the respective titles to the realty arising from the separate foreclosures of said liens must also remain on an equal basis. If this were not so, the coequality would be destroyed and the provision of the statute hold little meaning. We have held that the county may sell the property at resale for the ad valorem taxes

alone without including special assessments then delinquent, but that such sale was subject to said assessments and did not foreclose them. Service Feed Co. v. City of Ardmore, supra. This being the case, the resale must also be subject to the title acquired under the deed executed pursuant to the judgment foreclosing the assessment lien. The inevitable result, brought about by the statutes and our former decisions, is that the purchaser on execution and the purchaser at resale each acquires an undivided interest in the property in fee simple, the extent' thereof in either case depending upon the proportion that the amount of the lien bears to the sum of both. The relation of the purchasers becomes that of tenants in common, and their remedies are governed accordingly.

In the instant case the trial court was without power to adjudicate the title of the county and to foreclose its claim in the land. The statute is a special one, authorizing a particular remedy for an obligation wholly statutory, and must therefore be strictly construed to confine action thereunder to the remedy therein provided. The issues before the trial court concerned only the foreclosure of the lien in the amount found to be secured thereby, and sale of the land in satisfaction thereof, subject always to the title of the county, whatever that may be, and distribution of the proceeds as on sale on execution. The statute does not authorize the court to try title or to partition real property. Each lien creditor must make his debt out of the security in hand. There can be no marshaling of securities.

If proceeds of a sale for the satisfaction of either the ad valorem taxes or the special assessments alone were involved, I could agree with Mr. Justice DAVISON that such proceeds should be applied to the payment of the taxes or assessments and extinguishment of the liens in the inverse order in which such taxes and assessments accrued and liens attached, but where there is a sale for both the ad valorem and special assessments liens for periods of years which do not coincide, as is the case here, the application of such doctrine would destroy the coequality of the two liens.

The majority opinion holds that because the bondholder has elected to follow the statutory remedy of foreclosure, the cost of the foreclosure must come out of his pro rata share of the sale price of the property even though the county's title is disposed of by the foreclosure and subsequent sale. Such holding is contrary to the statute which authorizes the foreclosure, if the statute is correctly construed by the majority opinion. It amounts to the imposition of a penalty by fiat of this court. If we have such power, we should not exercise it.

I am of the opinion that the judgment of the trial court should be affirmed insofar as it forecloses plaintiffs' lien, but in all other respects it should be reversed and the cause remanded, with directions to enter judgment for the plaintiffs foreclosing their lien, subject specifically to the title of the county.

———

DAVISON, J. (concurring in part and dissenting in part). I agree with the conclusion of a majority of my associates that the statutory provision making liens for special assessments for street improvements coequal with liens for ad valorem taxes is valid and constitutional.

It is my opinion, however, that priority exists between successive annual liens determined upon application of the rule that the last is first and the first is last. I also entertain the view that the manner in which coequality is undertaken to be preserved in this case, that is, by sale and pro rata distribution of the proceeds between the holder of the special assessment liens and the holder of the ad valorem tax title, is unauthorized by law.

It is my belief that the proper solution of the problem in this case requires a recognition that titles created in separate proceedings and based upon coequal

liens are coequal, and that the relationship of tenancy in common exists between the holders of the respective titles.

The rights of the parties, if a controversy subsequently arises, can then be adjusted by proceedings to partition. If liens of unequal rank have been included within those of coequal rank in creating either of the titles, the question of priority can be adjusted through partition by sale as distinguished by partition in kind.

The importance of this case warrants setting forth my views in sufficient detail to reflect the basis of my conclusions. Such a treatment necessitates a limited restatement of facts appearing in the majority opinion.

This cause involves a controversy between bondholders of a paving district of the city of Wewoka, who are seeking to enforce by foreclosure proceedings a special assessment lien for street improvements on a city lot, and the county of Seminole (in which the city of Wewoka is located), which is claiming title to the property under a resale tax deed.

The settlement of the controversy involves a determination of what constitutes and what is the effect of coequality between ad valorem tax liens and liens for special improvements when separate procedures have been or are being pursued for the enforcement thereof.

The problem is one of public interest and innovation of theory on appeal is not prohibited. Magnolia Petroleum Co. v. State, 175 Okla. 11, 52 P. 2d 81.

The street improvement bonds herein involved were issued on April 26, 1924, by the town (now city) of Wewoka. They were not general obligations of the municipality (Severns Paving Co. v. Oklahoma City, 158 Okla. 182, 13 P. 2d 94), but, on the contrary, were payable from assessments made against property in a street improvement district numerically designated as number one of the town of Wewoka.

The street improvement district was created, the bonds were issued, and assessments were made against the property deemed to be benefited, under and by virtue of the provisions of chapter 173, S. L. 1923, 11 O. S. 1941 §§ 81 et seq. and §§ 151 et seq. The provisions of existing law at the time the bonds were issued became and constitute a part of the contract with the bondholders. Davis v. McCasland, 182 Okla. 49, 75 P. 2d 1118; Straughn v. Berry, 179 Okla. 364, 65 P. 2d 1203; Prince v. Ypsilanti, 140 Okla. 131, 282 P. 282; Nelson v. Pitts, 126 Okla. 191, 259 P. 533, 53 A. L. R. 1137; Perryman v. City Home Builders, 121 Okla. 150, 248 P. 605.

Among the properties specially assessed to bear the cost of the improvement was: lot one in block two of the incorporated town of Wewoka. The special assessment against this property was $464.40, payable in ten equal annual installments of $46.44 each, together with such interest and penalty as might accrue before payment. This action is to foreclose the special assessment lien on said property for delinquent installments.

With reference to the status of special assessments it was provided by a portion of section 23 of the act (chap. 173, S. L. 1923, supra) that:

". . . . Such special assessments, and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the publication of the ordinance levying the same, coequal with the lien of other taxes and prior and superior to all other liens against such lots or tracts of land, and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, . . ."

The legislative intent to create a coequal lien has been recognized by this court. Service Feed Co. v. City of Ardmore, 171 Okla. 155, 42 P. 2d 853; Blythe v. Pratt, 171 Okla. 2, 41 P. 2d 895; Runnells v. Citizens' Nat. Bank of Wooster, Ohio, 157 Okla. 94, 11 P. 2d 173. What constitutes coequality will be subsequently considered.

The specific date when the coequal lien attached under the literal provision of the statute as determined by the publication of the assessing ordinance does not appear in the record; however, the approximate time of its passage and publication is sufficiently indicated to satisfy the requirements of this litigation. It was passed and published in the latter part of 1923 or the first part of 1924.

In 1931 default was made in the payment of the annual installments, and thereafter no further payment was made on the same. This action to foreclose the lien on the property for the unpaid installments was instituted in the district court of Seminole county on May 13, 1937, by S. N. North and other bondholders as relators in the name of the city of Wewoka, Okla., as plaintiffs, against A. Thelma Johnson, the then owner of the property, as defendant.

At the time of the institution of the action three unpaid installments (the last three of the ten annual installments) for 1931-1932 and 1933 were delinquent and unpaid. These installments with the accumulated interest and penalties thereon aggregated $249.22.

The authority for the institution and maintenance of this foreclosure action rests on section 29 of chap. 173, S. L. 1923, 11 O. S. 1941 § 107, which, after prescribing the details of the procedure, provides in part:

". . . Such judgment shall provide for the sale of said real estate subject to existing general or ad valorem taxes and special assessments. All owners or encumbrancers shall be made parties defendant in such suit. . . ."

It seems obvious from the general content of the section, as well as the particular language above quoted, that the Legislature intended the remedy created to be available only for the enforcement of delinquent special assessments, and that the particular words used contemplate the limitation of the remedy rather than a qualification of the right to be enforced thereby. That is, the foreclosure remedy was created for the sole and only purpose of providing a method of enforcing delinquent special assessments. It was not intended to authorize the foreclosure or enforcement of other tax liens in a manner not elsewhere provided for, but the Legislature contemplated the continued existence of other laws authorizing sales for taxes to the extent of their force and effect. In other words, the remedy is cumulative. It does not purport or pretend to authorize a sale comprehending and extinguishing an outstanding tax title.

Similarly, by making provision for the exclusion of ad valorem taxes and sale subject thereto, the Legislature clearly indicated that no part of the proceeds of the sale should be applied to the payment of such taxes.

Thus by legislative action a remedy has been provided for a specific purpose. That remedy has been previously approved by this court as a valid legislative action. Service Feed Co. v. City of Ardmore, 171 Okla. 155, 42 P. 2d 853; Bailey v. Oklahoma City, 157 Okla. 96, 11 P. 2d 113; City of Shawnee v. Taylor, 171 Okla. 185, 42 P. 2d 860. The remedy has been classified as a special proceeding dependent upon and requiring substantial compliance with the statute. Morgan v. City of Ardmore, 182 Okla. 542, 78 P. 2d 785. We therein said:

"It is to be borne in mind that an action to foreclose an assessment lien for street improvements by a bondholder is a special proceeding for the collection of such assessments and the provisions of the statute providing the procedure therefor are mandatory and must be substantially complied with. . . ."

The relators through the plaintiff city are therefore seeking a judicial sale which will confer title based exclusively on delinquent paving assessments. They are now opposed by the county as the holder of a tax title derived through a sale for ad valorem taxes. This opposition has developed outside this litigation in the following manner and due to the following circumstances:

When in 1931 the owner of the property here involved began to neglect the payment of the special assessments against her property she likewise became negligent in connection with the payment of ad valorem taxes. As a result, ad valorem taxes for the years 1930 to 1938 were not paid.

After other prerequisite steps were taken, the status of the property, with reference to ad valorem taxes, became such that in 1939 it was advertised for and sold to the county at resale for the accumulated ad valorem taxes for the years 1930 to 1938. The amount of such taxes was $295.56.

This disposition at resale had no relation to the delinquent special assessments, which were not included in the amount for which the property was sold.

This court has held that although statutory authority exists for including in the amount for which porperty is sold at tax sale or resale the amount of any delinquent special assessments for street improvements (Oklahoma City v. Vahlberg, 185 Okla. 28, 89 P. 2d 962), the failure to include such items does not destroy the validity of the sale but merely renders the sale ineffective for the extinguishment of the liens and existing rights in connection therewith. Blythe v. Pratt, supra; Settle v. Frakes, 156 Okla. 53, 9 P. 2d 768. In so deciding, however, the court did not exclude the possibility that questions of priority of liens and titles derived from liens might arise by virtue of time; that is, prior and subsequent delinquencies were not judicially placed in the same category with reference to priority.

When the county of Seminole had acquired its title at resale for ad valorem taxes, it was made a party defendant to this litigation and thereupon asserted a title in itself allegedly superior to any that could be created by a sale in this proceeding.

On the trial of the case the trial court entered its judgment foreclosing the special assessment lien and directed a sale of the property. The county has appealed and appears herein as plaintiff in error. Our continued reference to the parties will be by their trial court designation.

It is thus apparent from the foregoing statement of facts, considered in connection with the statutory provisions and established principles of law interpolated therewith, that in this appeal we are confronted with a situation in which by legislative enactment provision has been made for coequality between liens for special assessments and liens for ad valorem taxes.

It is further apparent that each of those coequal liens may, through appropriate proceedings and independent of the other, develop into title, which title in each case purports to be in fee simple as far as the other or any other title is concerned.

In this case one title has already been secured in another proceeding and recognition thereof is sought herein and in this another title is being sought through foreclosure under the statute.

It is at once apparent that (other factors creating priority being eliminated from consideration for the present) if either title is allowed to prevail over the other, coequality of the respective liens upon which they are based is automatically destroyed and emasculated.

There is one rational and legally sound solution for such a situation. Two outstanding independently created coequal titles to the same property and each extending to the entire estate can result in but one relationship, namely, that of tenants in common, the proportionate share of each of the respective tenants in common depends upon the extent of the obligation secured by the lien from which the title arose, with due consideration to any portion of either obligation which may have constituted a prior lien. Tenancy in common requires only unity of possession or the right of possession, and other unities essential to other types of cotenancy are not essential. 14 Am. Jur. 87; Earp v. Mid-Continent Petroleum Corporation, 167 Okla. 86, 27 P. 2d 855. Specific judicial

authority for this view will be found in the cases from Minnesota which I shall subsequently discuss in this opinion and which are of controlling importance because of the close analogy of the problem here presented.

At this point it is appropriate that I briefly allude to what is meant by coequality of liens. By the statute, coequality between ad valorem tax liens and special assessment liens is provided, but it is of paramount importance that we remember that coequality does not exist between ad valorem tax liens for successive years, and it follows that such equality does not exist between titles secured pursuant to liens for successive years. In such cases the last is first and the first is last. As is said in Cooley on Taxation (4th Ed.) vol. 3, p. 2473:

" 'Tax-liens,' it is said, 'take priority in the reverse order of other liens. As to all other liens the first in order of time is prima facie superior to those of a later date. In the case of tax-liens, however, the 'last shall be first and the first last.' The general and universal rule is that in proceedings in rem to enforce the payment of taxes the last tax levied and sought to be enforced is superior and paramount to the lien of all other taxes, claims, or titles.' This rule is well settled."

This rule of priority in the reverse order between ad valorem taxes for successive years has been recognized and applied in this jurisdiction. State v. National Bank of Commerce of Pawhuska, 139 Okla. 134, 281 P. 579 (modified in other respects by subsequent decision of this court). Notice, also, discussion in Mahany, Oklahoma Sales of Land For Taxes, chap. IV., p. 69, par. 11.

This general rule is, of course, subject to special statutory provisions applicable to particular situations which by their application create exceptions not herein applicable and not a proper subject of discussion in this opinion. (Notice 68 O. S. 1941 § 451; Honeyman v. Andrew, 124 Okla. 18, 253 P. 489; Neff v. Gray, 157 Okla. 207, 11 P. 2d 755.)

The reason for the general rule is obvious. A person who acquires the title to land takes it subject to the subsequent accrual of obligations imposed by the sovereign power. Those obligations being a burden against the land only, the land must remain subject to their imposition.

So, in general, and subject only to statutory provisions creating exceptions to the contrary, the rule of the "last shall be first and the first shall be last" applies to ad valorem tax liens accruing from year to year.

The legislative provision making street improvement assessments coequal does not, nor was it intended to, destroy this priority from year to year, but, on the contrary, was intended, in my judgment, to give each delinquent paving assessment coequality with the delinquent ad valorem taxes subject to sale that year. That is, place it on the same footing.

There is another possible interpretation based on the peculiar wording of our statute which from a purely literal and logical standpoint claims a degree of consideration but which must be discarded by reason of its failure to harmonize with the legislative intent as determined by the result and its failure to dovetail in a rational manner with other statutory provisions.

Looking exclusively to the statute creating coequality and applying the rule of reverse priority, it will be noticed that the street assessment lien is made to attach as of the date of the publication of the assessing ordinance, which of course is at or near the beginning of the ten-year period during which the assessments become due; in this case, in the latter part of 1923 or 1924. It could be very reasonably said that each ad valorem tax for each subsequent year created a superior lien. Such a view, though defensible in theory, would, in practical effect, destroy all semblance of coequality from a practical standpoint. I am of the opinion that it would not carry out the legislative intent especially in view of legislative provisions contemplating the certification each year of de-

linquent paving assessments to the county treasurer and authorizing their combination with delinquent ad valorem taxes for tax sale purposes, all of which proceed on a year to year basis. Notice procedure as reviewed and considered in Oklahoma City v. Vahlberg, supra.

In Board of Com'rs of Creek County v. Alexander, 58 Okla. 128, 159 P. 311, this court said in paragraph 1 of the syllabus:

"It is a cardinal rule in the construction of statutes that the intention of the Legislature, when ascertained, must govern, and that to ascertain the intent all the various provisions of legislative enactments upon the particular subject should be construed together and given effect as a whole."

And in paragraph 4:

"When it is apparent that a strict interpretation of a particular statute, construed alone, would defeat the intention of the Legislature as shown by other legislative enactments, which relate to the same subject, and which have been enacted in pursuance of, and according to a general purpose in accomplishing a particular result, such construction should not be adopted."

Upon consideration of the foregoing principles and in order to accomplish the purpose of the legislative act, I am of the opinion that each annual paving installment as it becomes a delinquent carries with it a lien of equal priority with ad valorem taxes which become or would be delinquent and salable in the same year.

To illustrate specifically, past-due delinquent ad valorem taxes become subject to sale during November. A delinquent special assessment becomes delinquent and should be certified to the county treasurer in September. It may be combined with the ad valorem taxes for such sale. It was and is these two obligations and the liens which protect the same which are coequal. In other words, coequality should be determined as of the time the annual delinquencies of ad valorem and special assessments become or would become salable.

Each annual delinquency salable during any year, whether street improvement or ad valorem assessment, is superior to prior annual delinquencies salable of either class, and inferior to annual delinquencies salable during subsequent years.

The elimination of the possible but untenable theory that the attachment of the street improvement lien prior to the maturity of installments (that is, at the time the assessing ordinance is passed) makes the problem identical in all essential respects with that which confronted the Supreme Court of Minnesota in connection with a statute passed by the Legislature of that state in 1905. By section one of chapter 200 of the Laws of Minnesota of 1905, it was provided:

"That all assessments upon real property for local improvements made or levied by the proper authorities of any city in the State of Minnesota now or hereafter containing a population of over 50,000, according to the last national or state census, shall be a paramount lien upon the land upon which they are imposed from the date of the warrant issued for the collection thereof, and of equal rank with the lien of the state for taxes which have been or may be levied upon said property under the general laws of the state; and that the general rules of law as to priority of tax liens shall apply equally to the liens of such assessments and to such liens for general taxes, with the same force and effect as though all of the liens aforesaid and all of the taxes and assessments aforesaid, were of the same general character and imposed for the same purpose and by the same authority, without regard to the priority in point of time of the attaching of either of said liens, and a sale or perfecting title under either shall not bar or extinguish the other."

The legislative provisions of the Minnesota act were more specific and detailed than are our own. Perhaps they were unnecessarily so. The additional provisions do not depart from coequality of the liens, but merely expressly recognize conditions which in many respects must be necessarily implied in order to preserve the coequality

of liens. The difference in the two acts does not, therefore, create the basis for a distinction.

The foregoing act was the subject of controversy before the Minnesota court a number of times. Gould v. Grout, 110 Minn. 324, 125 N. W. 273; Smith v. Iten, 116 Minn. 44, 133 N. W. 74; Gould v. City of St. Paul, 120 Minn. 172, 139 N. W. 293; Midway Realty Co. v. City of St. Paul, 124 Minn. 300, 145 N. W. 21.

In Minnesota, as in this state, separate proceedings were available by which title could be obtained from the respective liens.

The case of Gould v. City of St. Paul, supra, is particularly instructive, but due to the length of that opinion we shall not encumber this opinion with quotations therefrom. The holdings in the Gould Case and other preceding cases were summarized in the case of Midway Realty Co. v. City of St. Paul, supra. The conclusions are summarized by the following excerpts:

"General tax liens and city assessment liens are of equal rank. The general rule as to tax liens of equal rank apply. Each lien is superior to all that go before it. The lien last in time is first in right, whether it be a tax or assessment lien. A later tax lien will take priority over all earlier liens, whether for taxes or assessments. Likewise a later assessment lien will take priority over all earlier liens, whether for taxes or assessments. . . .

"All city assessment liens accruing during any year are equal in right of priority with the lien of taxes for that year. . . . Tax and assessment liens accruing during any one year are accordingly equal in right of priority. Tax and assessment liens accruing during a subsequent year all take priority over all tax and assessment liens of former years.

"Where land is sold at a forfeited tax sale for taxes for a number of years, as from 1901 to 1906, for an entire amount, the lien of the holder of a certificate issued on such a sale is equal in right of priority with an assessment lien accruing in any one of those years.

"Where the holders of liens equal in right of priority are foreclosed—that is,

where title is obtained thereunder by sale and expiration of the period of redemption—the holders thereof become, by operation of law, tenants in common of the property. Foreclosure of any such lien does not cut out another lien of equal right of priority."

Notice, also, Waltom v. City of Portales, 42 N. M. 433, 81 P. 2d 58. There is one point upon which I am unable to follow and concur in the view adopted by the Minnesota court. That is, the failure to preserve coequality from year to year and priority between prior and subsequent years when annual delinquencies salable of unequal rank have been merged in the same deed.

It is my opinion that priority between successive annual liens can and should be preserved even though those liens have been merged in titles by continuing to recognize that those liens are the basis of the title. When there are two outstanding titles, priority exists to the extent only that they embrace liens of coequal rank.

To illustrate and apply to this case, delinquencies of ad valorem taxes which become or rather would have become salable during years subsequent to the delinquency of the last of the three installments for street improvements being foreclosed, are included in the ad valorem tax title of the county. These subsequent delinquencies were, on considering the last shall be first and first shall be last doctrine, prior to the paving lien, and if the value of the property is less than the aggregate sum due as merged in the two titles, they operate to increase the interest of the county and in any partition sale should be paid first from the proceeds of sale.

Thus, in this case ad valorem taxes for the year 1930 in the sum of $73.12 became delinquent and salable in November of 1931. At the same time an installment of a special assessment for street improvement for the year 1931, in the sum of $46.44, also became salable. These two liens were and are coequal. The same coequality exists between the 1931 taxes in the sum of $38.86 and the 1932 special assessment installment in

the sum of $46.44. Likewise, coequality exists between the 1932 ad valorem taxes for $31.23 and the special assessment for 1933 for $46.44. In the aggregate, parity exists in this case between liens for ad valorem taxes in the sum of $139.21 and liens for paving taxes in the sum of $139.32, plus accumulated interest and penalties. On the other hand, there are accumulated ad valorem taxes for the years 1933-1938, inclusive, becoming salable in the years 1934 to 1939, inclusive, aggregating $156.35, being later in point of time than the paving assessments and the prior ad valorem tax liens. The latter sum should be recognized as based upon a superior lien and should be paid first out of the proceeds of the sale of any property if any contest arises between the co-owners requiring partition by sale.

It is also appropriate to notice at this point that the Minnesota court in the Gould Case, 139 N. W. 293 (supra), recognized the right of the holders of the respective titles to avail themselves of the remedy of partition for the settlement of any controversy that might arise between them.

In accord with the foregoing authorities I am of the opinion:

1. That such coequality exists on a year to year basis, making the lien for each annual special assessment when it becomes delinquent coequal with the lien for ad valorem taxes that become delinquent and salable during that year.

2. That priority may exist between liens for street improvements and liens for ad valorem taxes from year to year on application of the rule that the last shall be first and the first shall be last, subject to express exceptions created by legislative act or necessarily implied from the same.

3. That where land is sold at resale to the county for taxes for the years 1930 to 1938, inclusive, without reference to special assessments falling due during those years, and in another and independent procedure title is sought which grows out of the special assessment lien

for assessments becoming due for any one or several of the same years, the two titles are of coequal rank and the holders thereof are tenants in common, their respective fractional interests being determined on a pro rata basis, taking into consideration priorities between annual delinquencies salable.

4. That the judgment of the trial court insofar as it failed to recognize the coequality of the outstanding title of the county should be modified and insofar as it authorized foreclosure of the special assessment lien should be affirmed.

5. That the rights of the tenants in common should be adjusted in a partition suit, not in this special statutory proceeding.

For the reasons stated, I concur in part and dissent in part.