## BLYTHE v. PRATT et al.

No. 23107.    March 5, 1935.

Charles Skalnik, for plaintiff in error.

R. P. Colley and Orr & Rust, for defendants in error.

BUSBY, J. The plaintiff in error, J. E. Blythe, filed a petition in the district court to quiet title to six lots in Oak Terrace addition to the city of Tulsa. The Securities Adjustment Company, H. L. Cannady Company, H. D. Pratt, commissioner of finance and revenue of the city of Tulsa, and the city of Tulsa were named as defendants.

The Securities Adjustment Company and

H. L. Cannady Company filed disclaimers. The defendant H. D. Pratt filed his answer alleging that he claimed some right, title, or interest in the property by virtue of ordinance No. 2760 passed by the city of Tulsa on December 12, 1924, which levied special paving assessments against the property described. The plaintiff filed his reply alleging that the ordinance was unconstitutional in seeking to create a personal liability reaching beyond the property assessed and therefore void, and further replying, the plaintiff alleged that the defendant Pratt, commissioner of finance and revenue of the city of Tulsa, is not the real party in interest to the claim under ordinance 2760, upon which he relies.

By agreement the matter was submitted to the court on an agreed statement of facts, and with the issues joined, the court found that the plaintiff took his title to the property in question subject to the lien created by ordinance No. 2760, and that all installments for paving due thereon since the issuance of the tax deed were valid and subsisting liens, payable in installments according to the conditions stated in the tax bills. The plaintiff has appealed from that judgment.

The lots under consideration were sold at resale to Tulsa county, and by the county, through its county commissioners, sold to the plaintiff.

It was agreed that the only question presented to the court for determination was whether or not the plaintiff acquired title in fee simple, free and clear of all incumbrances, and particularly the lien created by ordinance No. 2760 of the city of Tulsa, and whether the tax deeds have such force and effect as to strike down the lien of paving assessments not yet matured or due and still owing under the terms of the ordinance at the time of the issuance of the tax deeds.

The plaintiff contends that the purchaser at a tax sale takes not the title of the owner, but a new, independent, paramount, and superior title from the sovereign state, extinguishing all prior liens and incumbrances, including special assessments. The plaintiff admits that his contention is based directly upon the case of Franklin Securities Co. v. Allen P. Clay, 146 Okla. 102, 293 P. 529, wherein this court, by a commissioner's opinion, held:

"Where the holder of tax bills, issued by a city to a contractor to pay for street improvements, elects to follow the procedure provided by the city charter instead of state statute; and where all of the proceedings, including the passage of the assessment ordinance, are had and taken under such charter, the charter and assessment ordinance providing that the lien thereby created shall be superior to all liens except city, county, and state taxes, the holder thereof will take the same subject to the lien of the state for ad valorem taxes; and where the property, upon which the lien for such improvements attaches, is sold by the county for delinquent ad valorem taxes, a purchaser at the tax sale will take title superior and paramount to the lien created by the tax bills"

—and said:

"It will be noted that the charter, as well as the assessment ordinance, makes the lien for street paving and other street improvements subordinate to the lien for city, county, and state taxes. This charter provision, as well as the proceedings thereunder, has been held valid and sustained by this court in the case of M., K. & T. Ry. Co. v. City of Tulsa, 113 Okla. 21, 238 P. 452."

We agree that the provisions of the charter of the city of Tulsa and the proceedings thereunder relative to street improvements were held valid and sustained by this court in the case of M., K. & T. Ry. Co. v. City of Tulsa, supra, in so far as the matters necessary to be determined in that case were concerned. We do not agree that the city charter of Tulsa, or the city ordinance considered in that case, or the one here to be considered, designated as ordinance No. 2760, makes the lien for street paving and other street improvements subordinate to the lien for city, county, and state taxes.

The part of section 13, art. 9, of the city charter of Tulsa relative to street improvements provides, in part, as follows:

"The cost of any such improvements assessed against any property, together with all costs and reasonable expenses in collecting the same, including reasonable attorney's fees, when incurred, shall be secured by a lien upon such property superior to all other liens, claims, or title, except city, county and state taxes, and such lien, may be enforced either by suit in court of competent jurisdiction, or by sale in the same manner as far as applicable, as sales are authorized to be made by the city of Tulsa for nonpayment of taxes. * * *"

It might be well to state here that the city charter of Tulsa has been so amended under the holdings of this court as to leave the collection of all ad valorem taxes in the hands of the county treasurer.

The assessing ordinance in question provides, in part, as follows:

"That the assessment hereby levied against each of the above-described lots and parcels of land shall bear interest at the rate of seven per centum (7%) per annum, and both principal and interest are hereby declared to be a debt against the owners of the land and a lien upon such lots and parcels of land prior to all other liens, except the lien for state, county and city taxes, from this date, and the same shall be enforced and collected as other taxes in the city of Tulsa, Okla., are enforced and collected, or may be recovered and the lien enforced by appropriate judicial proceedings."

Thus we see that while the charter and city ordinance both provide that the lien for street improvements shall be prior to all other liens, except the lien for city, county and state taxes, in neither is it said that such lien is inferior to the lien for taxes due the city and county and state.

Under the provisions of section 3a, art. 18, of the Constitution of Oklahoma, any city having a population of more than 2,000 inhabitants may frame a charter for its own government, consistent with and subject to the Constitution and laws of this state. In M., K. & T. Ry. Co. v. City of Tulsa et al., 113 Okla. 21, 238 P. 452, this court had occasion to consider certain portions of the city charter of Tulsa, relative to the right of the city of Tulsa to assess and collect assessments against real estate for street improvements. It was the contention of the railroad company that the city had no authority to levy the assessments in question and to provide for their collection by suit in the district court, in a manner different from the general statute provided for same on revenue and taxation, and that any different procedure prescribed by a city is in conflict with the state Constitution. Upon appeal, this court held:

"The provisions of a city charter, and of an ordinance in harmony therewith, authorizing the city board of commissioners to improve streets and alleys and to let contracts for paving same and to make assessments against abutting lots in proportion to the benefits accruing to such lots and to create a lien against such lots for the payment of such assessments and to provide that such lien may be foreclosed in a civil action in the district court, do not exceed the limitations, contained in section 3a, art. 18, of the Constitution, upon the powers of a city, or conflict with the provisions thereof, provided such charter provision and ordinance do not undertake to make the lien for city assessments prior and superior to the liens of the state for delinquent taxes or other liens which the state may have against such property.

"Nor is the provision of such charter and ordinance authorizing a foreclosure of such lien by a civil action in district court invalid, provided such procedure is not made exclusive.

"The statutes on revenue and taxation prescribe a procedure for enforcement of delinquent tax liens against real estate, including city taxes and assessments for city improvements, but, not being made exclusive, do not prohibit a city from authorizing a different procedure for the collection of city assessments, provided such procedure authorized by the city is not made exclusive"

—and said:

"The ordinance thus expressly excepts the liens created by general statutes for securing the collection of delinquent state, county, and municipal taxes, and does not conflict with the general statutes which create a first lien upon real estate for the collection of state, county, and municipal taxes, nor conflict with the procedure provided by statute for enforcement of such liens, nor interfere with the superior powers of the state in the enforcement of any liens over which the state has assumed sovereign control. On the contrary, the ordinance clearly recognizes the supremacy of state laws over municipal laws in matters over which the state has assumed to exercise a sovereign control.

"The charter provisions governing the board of city commissioners in matters of street improvements, levying of assessments, creation of liens, for the payment of same, and authorizing the procedure for the enforcement of such liens, are not exceeded by the provisions of ordinance No. 1051, supra, * * *

"Thus it is seen that the ordinance, supra, is clearly within the powers granted by the charter of the city and that neither the charter provisions nor the ordinance purports to make the lien for city improvements superior and prior to the state liens for delinquent taxes, both the charter and ordinance recognizing the supremacy of state laws over the city laws in matters in which the state has a sovereign governmental interest, and both seem to be within the scope of the following provision in section 3a, art. 18, of the Constitution. * * *"

The language found in the body of the opinion in Franklin Securities Co. v. Clay et al., supra:

"The charter and assessment ordinance make the cost of street improvements a lien against the lots abutting upon the improved

street, subordinate to the lien of the state for general taxes * * *"

—was not warranted by the holding in M., K. & T. Ry. Co. v. City of Tulsa, supra, to which it refers. Nowhere in that opinion did this court say that the lien for street improvements was subordinate to the lien for city, county, and state taxes.

Section 7, art. 10, of the Constitution of Oklahoma provides:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

Under the well-established principle of law, municipal corporations are universally held to be creatures of law and can exercise only such powers as are delegated to them. When a city adopts a charter form of government in the exercise of its power as a municipal government, the same must be consistent with the organic law of the state and subject to the supreme power of the Legislature. There is no law in the statutes of Oklahoma which authorizes, through municipal charters or otherwise, the issuing of a tax deed with such superior title from the sovereign state as will strike down and extinguish liens guaranteed by the law for paving and other special improvement assessments. The only statute that attempted to grant any such authority was section 6, chap. 130, S. L. 1919, which has long since been declared unconstitutional. Perryman v. City Home Builders, 121 Okla. 150, 248 P. 605; Nelson v. Pitts, 126 Okla. 191, 259 P. 533; Moore v. Otis, 275 Fed. 747. From the time when municipalities were first authorized by legislative enactment to levy and collect assessments for local street improvements, there was contained in such legislative enactment a provision providing for a lien upon the property to protect such assessments. Article 6, chap. 12, Wilson's Revised and Annotated Statutes of Oklahoma 1903, sections 443 to 453, inclusive; chapter 10, art. 1, S. L. 1907-08; section 634, Rev. L. of 1910, which was carried forward and became section 4609, C. O. S. 1921, and was a part of the general statute in force governing street improvements and special assessments therefor at the time the assessing bonds here considered were issued. It provides:

"Such special assessments and each installment thereof and the interest thereon are hereby declared to be a lien against the lots and tracts of land so assessed from the date of the ordinance levying the same, co-equal with the lien of other taxes, and prior and superior to all other liens against such lots or tracts; and such lien shall continue as to unpaid installments and interest until such assessments and interest thereon shall be fully paid, but unmatured installments shall not be deemed to be within the terms of any general covenant or warranty."

By the provisions of section 4618, C. O. S. 1921, the procedure for collecting the special assessments is for the delinquent assessments to be certified by the city clerk to the county treasurer to be collected as other delinquent taxes are collected. This court has held that the statutes of this state provide a full and comprehensive system by which delinquent taxes on real estate may be collected by a sale of such real estate by the county treasurer and that method is exclusive for the enforcement of special assessments for street improvements. Prince, Co. Treas., v. Ypsilanti Saving Bank, 140 Okla. 131, 282 P. 282; Glasser v. Goltry, 136 Okla. 182, 276 P. 738; City of Sapulpa v. Land, 101 Okla. 22, 223 P. 640, and McGrath v. Oklahoma City, 156 Okla. 34, 9 P. (2d) 711.

This court has held that when the original tax sale was for both ad valorem taxes and for delinquent installments of paving assessments, such a sale extinguishes the lien for both ad valorem taxes and the delinquent installments of the paving assessments included in the first sale, but does not affect the lien of other delinquent installments of paving assessments which are not delinquent. McGrath v. Oklahoma City, supra; Settle, Co. Treas., v. Frakes et al., 156 Okla. 53, 9 P. (2d) 768.

In the original sale of the property here considered, wherein the county became the purchaser, there was no attempt to include delinquent assessments for special improvements. Neither is it alleged nor proven that any of the assessments were delinquent when the property was sold to the county at the delinquent tax sale. It is further shown on the face of the resale tax deed made to Tulsa county that there was no attempt to cancel assessments for street improvements. The deeds contain the recital:

"* * * and all delinquent taxes, penalties, interests and costs previously assessed or existing against said real estate, including ad valorem and outstanding individual and county tax sale certificates are hereby canceled and set aside. All special improvement taxes are hereby excepted."

The deeds from Tulsa county through its chairman of the board of county commis-

sioners to the plaintiff contained the recital:

"All special improvement taxes are hereby excepted."

It certainly cannot be successfully contended that Tulsa county could convey any greater right than it obtained under the resale tax deeds.

Doubtless the Legislature had as much authority to make the special assessment liens inferior to the claims and liens of the state for city, county, and state taxes as to make the lien coequal with the liens for taxes. In Perryman v. City Home Builders, supra, this court said:

"The state by a sovereignty clause could have made the claim of the lienholders subservient to the claim of the state for its taxes, but this it did not elect to do, but, on the other hand, it provided that the lien against lots or tracts of land so assessed, from the date of the ordinances levying same, should be coequal with the lien of other taxes."

Neither has the Legislature delegated any authority to the municipalities to make the liens for special assessments inferior to the lien for taxes, and neither the Tulsa city charter nor the assessing ordinances issued thereunder, here considered, have declared such intention.

In Moore, Co. Treas., v. Otis et al., 275 Fed. 747, that court in reviewing the act of of the Legislature of 1919, supra, relative to liens for special assessments, held:

"The laws existing at the time of the issuance of municipal bonds, and under the authority of which they are issued, enter into and become a part of the contract in such a way that the obligation of the contract cannot thereafter be in any way impaired, or its fulfillment hampered or obstructed, by a change in the law."

That holding has since been followed by this court. Perryman v. City Home Builders, supra; Nelson v. Pitts, supra.

Since the plaintiff bases his whole contention upon the fact that the holder of the special tax bills for the street improvements elected to follow the procedure provided by the city charter instead of the state statute, and contends that when the property was sold by the county treasurer for delinquent ad valorem taxes such tax deed conveyed the title to the land clear of all liens for paving assessments, including those not yet matured and due, let us see what the holder of the tax bills did in electing to follow the procedure provided in the city charter.

The city ordinance incorporating the improvement district including the property here considered, designated as ordinance No. 560, and ordinance No. 2760, which in levying the assessments were duly passed by the city authorities, which was necessary to do whether the collection of the assessments was to be made under the charter or under the general statute. It is not shown that any of the assessments were past due and unpaid when the land was sold for ad valorem taxes, and it is agreed in the stipulation that no action had been taken by the owners of the tax bills to enforce collection, either by the county treasurer, as other taxes, or by special suit in the district court. It was not time for the owners of the tax bills to select or determine what method would be used in the collection of same. It was the duty of the city of Tulsa to collect the assessments as they came due and the commissioner of finance is charged with that duty. The tax assessment certificates or bonds had passed out of the hands of the original owner, and the mere fact that the city of Tulsa, through its commissioner of finance, was collecting the assessments as they came due does not show any selection on the part of the owners of the tax bills to pursue a special remedy provided by the charter for collecting the assessments. The owners of the tax bill or improvement certificates were not named in the plaintiff's petition as party defendants therein, and for that additional reason the plaintiff could not maintain his suit which attempts to extinguish whatever lien the owner or owners of the improvement certificates might have against the property.

Finding no error in the judgment of the trial court, the same is affirmed.

McNEILL, C. J., and RILEY, PHELPS, and GIBSON, JJ., concur.