**BRADFORD et al. v. SCHMUCKER et al.**
**HOLCOMB et al. v. TOWN OF OKEENE, OKL., ex rel. BURGARD.**

Nos. 2659, 2660.

Circuit Court of Appeals, Tenth Circuit.

May 8, 1943.

---

E. Blumhagen and Ted R. Fisher, both of Watonga, Okl. (Falkenstine & Fisher and Clyde E. Robinson, all of Watonga, Okl., on the briefs), for appellants.

Arnold T. Fleig, of Oklahoma City, Okl., for appellees Sarah Schmucker and the City of Watonga, Okl.

Clayton Carder, of Hobart, Okl., for appellee Town of Okeene, Okl.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

These cases were submitted together and may be decided in the same manner. The City of Watonga, Oklahoma, created a street improvement district, made an assessment against the property therein—apportioned among the several lots and parcels, and issued paving bonds. The assessment was due in ten equal annual installments, the first on September 1, 1928, and continuing through 1937; and the bonds were due on or before October 1, 1937. Default was made in some installments against certain lots, and some of the bonds were not paid at maturity. Sarah Schmucker, owner of thirteen past due bonds, on relation of the city, instituted the first action to foreclose the assessment lien, and to reform tax resale deeds under which certain defendants claimed in a manner to show that the property described therein was subject to the unpaid assessment lien. Certain defendants answered, and by cross complaint sought to quiet their respective titles. Similarly, the Town of Okeene, Oklahoma, created a street improvement district, made an assessment, and issued bonds. The assessment was due in ten equal annual installments, the first on September 1, 1929, and continuing through 1938; and the bonds were due on or before October 1, 1938. Some installments against certain lots were not paid, and default was made in payment of some of the bonds. W. H. Burgard, owner of twenty past due bonds, on relation of the town, instituted the second action to foreclose the assessment lien, and to bar the defendants from having any right, title, or interest in the property adverse to the purchaser or purchasers at the sale. By cross complaint certain defendants sought to quiet their respective titles acquired through tax resales. In each case, plaintiff prevailed and certain defendants appealed. For convenience, reference will be made to the parties as they appeared in the trial court.

The respective assessments were made and the bonds issued under the provisions of chapter 173, Laws of 1923. Section 23 of the act, 11 O.S.A. § 103, provides that such a special assessment, and each installment thereof and the interest thereon, shall constitute a lien against the lots and tracts assessed, co-equal with the lien of other taxes and prior and superior to all other liens, and that it shall continue respecting unpaid installments and interest until fully paid; section 28, 11 O.S.A. § 106, provides that the city or town clerk shall, promptly after the maturity of any installment and on or before September fifteenth of each year, certify to the county treasurer all delinquencies, that the county treasurer shall place them on the November delinquent tax list, and that they shall be collected as are other delinquent taxes; and section 29, 11 O.S.A. § 107, authorizes the holder of any street improvement bond

issued under the provisions of the act to institute, in the name of the city or town issuing such bond, an action in the district court to foreclose the assessment lien whenever it is delinquent for twelve months or more. Section 381, Title 68 O.S.A., provides that the county treasurer shall, in all cases where taxes are a lien on real estate and are unpaid on the first of May, advertise and sell such real estate; section 382 provides that he shall give notice of the sale by publication thereof once a week for three consecutive weeks, commencing after the first day of October; that the notice shall state that all lands on which the taxes for the fiscal year remain due and unpaid will be sold, shall state the time and place of the sale, shall contain a list of the lands to be sold, and shall state the amount of the taxes due; section 383 provides that the sales shall begin on the first Monday in November; and section 391 provides that in case there are no bidders offering the amount due, the treasurer is authorized to bid in the property for the county. Section 12753, O.S.1931,—repealed by section 17, article 31, chapter 66, Laws of 1939, but in force at the time of the resale hereinafter mentioned—provides that when real estate purchased by the county shall remain unredeemed for a period of two years from the date of sale, the county treasurer shall proceed to sell it at public auction, after advertising as therein provided; and section 12754, likewise repealed by the act of 1939, provides that the sale shall be held on the third Monday in April, and specifies the manner of advertising. A sale of real estate made under these statutory provisions for both delinquent ad valorem taxes and delinquent installments of an assessment for street improvements extinguishes the lien for the ad valorem taxes, and it also extinguishes the lien of the assessment, to the amount and extent of the delinquent installments for which the sale is made. Prince v. Ypsilanti Savings Bank, 140 Okl. 131, 282 P. 282; McGrath v. Oklahoma City, 156 Okl. 34, 9 P.2d 711; Blythe v. Pratt, 171 Okl. 2, 41 P.2d 895. But a sale for delinquent installments alone does not affect a lien for ad valorem taxes. McGrath v. Oklahoma City, supra. Neither does a sale only for ad valorem taxes affect in any manner an existing lien for delinquent installments of assessment. Runnels v. Oklahoma City, 150 Okl. 292, 1 P.2d 740; Service Feed Co. v. City of Ardmore, 171 Okl. 155, 42 P.2d 853; McGrath v. Oklahoma City, supra. And while a sale for both delinquent ad valorem taxes and delinquent installments of assessment extinguishes the lien to the amount and extent of the installments for which the sale is made, it does not affect the lien of other delinquent installments not included in the sale. Settle v. Frakes, 156 Okl. 53, 9 P.2d 768; Blythe v. Pratt, supra.

Watonga and Okeene are both in Blaine County. The clerk of Watonga annually certified to the county treasurer the delinquencies for the years 1928 to 1935, inclusive; the clerk of Okeene certified in like manner the delinquencies for the years 1929 to 1935, inclusive; the treasurer placed the property on the delinquent tax list; sold it each year; bid it in for the county; and in 1936 resold it at the tax resale. But the notice of sale in November, 1928, stated that the property listed would be sold for the taxes due in the year 1927; there were no delinquencies of assessment due in that year; those due in 1928 were included; and the total amount in each instance included the installment due in 1928. The notice in 1929 stated that the property would be sold for the taxes due in 1928; the delinquencies of assessment due in that year were not included; instead, those due in 1929 were included; the total amount in each instance included the installment due in 1929, not 1928; and like discrepancies occurred in the notices of later years, except those for 1934 and 1935, respectively, the first of which stated that the sale would be made "for delinquent ad valorem taxes for the year 1933 and delinquent paving taxes for 1934 * * *", and the second contained a like statement, except in respect to the years. Each annual notice described the lot, tract, or parcel, listed the amount of ad valorem taxes due, listed the delinquencies in assessment, using in most instances if not all the word "paving" or "pav", and stated the total amount due. The notice of the resale in 1936 stated that the real estate would be sold for the ad valorem and special taxes due thereon, delinquent and unpaid; listed the property by lot and block number, stated the name of the owner in some instances and recited the name unknown in others, stated the years for which the taxes were unpaid, in some instances recited the date of the original sale, and in each instance stated the amount due in lump sum.

Mere immaterial irregularities or unimportant deviations in the administrative steps leading up to a sale of real estate for delinquent taxes do not render the sale invalid. Swearingen v. McCartan, 186 Okl. 241, 96 P.2d 1061; Henshaw v. Morris, 189 Okl. 603, 119 P.2d 85; Chamberlain v. Davis, Okl.Sup., 130 P.2d 848. But a sale made at a time other than that authorized by law is a nullity. Blaine County Bank v. Noble, 55 Okl. 361, 155 P. 532; Union Savings Ass'n v. Cummins, 74 Okl. 201, 177 P. 901; Gulager v. Coon, 93 Okl. 62, 218 P. 701. Likewise a sale made at a place different than that provided by law is void. Davenport v. Wolf, 59 Okl. 92, 158 P. 382; Hill v. Turnverein Germania of Oklahoma City, 77 Okl. 242, 187 P. 920. Advertisement of the sale is jurisdictional; and failure to give the notice prescribed by the statute is fatal to the validity of the sale. Davenport v. Doyle, 57 Okl. 341, 157 P. 110; Rucker v. Burke, 170 Okl. 243, 39 P.2d 6; Ewart v. Boettcher, 174 Okl. 460, 50 P.2d 676. And where the notice is published for a shorter period than that required by the statute, the sale is void. Welborn v. Whitney, 190 Okl. 630, 126 P.2d 263.

No case has been called to our attention and our own research has failed to disclose one in which the supreme court of the state dealt with the question of the effect of a defect of this kind in the notice of sale. But in City of Tulsa v. Edwards, 111 Okl. 251, 239 P. 572, the notice stated that the sale would take place at the front door of the courthouse, the sale was made in the office of the county treasurer—the place fixed by law, yet it was invalid. In Ewart v. Boettcher, supra, the property was in a given section, township, and range. The notice of resale described it as being a part of the second riverside addition. The addition was in an entirely different section and township. The court stated that the erroneous description in the notice of resale constituted a serious defect; that one looking at the advertisement could not have found the land because it was not even in the right section or township; but that, whether the advertisement of the resale was sufficient, the total failure to advertise the original sale and the defect in description in the notice of resale together rendered the sale void. In Brown v. Mudd, 173 Okl. 152, 47 P.2d 109, the statute required that the notice of sale give the name of the owner, as shown by the last

tax rolls in the office of the treasurer. The notice erroneously gave as such owner the name of a person who was a stranger to the title, and the resale was therefore held invalid. In Swearingen v. McCartan, supra, the notice of the resale failed to contain the name of the owner, as shown by the last tax rolls. But the last tax rolls did not contain any name as the owner of the particular property. The court sustained the validity of the resale, pointing out that there was no conflict or inconsistency between the tax rolls and the notice. It was said that in order to be regular, the notice should conform to the rolls in that respect. The earlier case of Brown v. Mudd, supra, was distinguished on the ground that there a conflict or inconsistency between the two did exist. In Taylor v. Trow, Okl.Sup., 131 Pac.2d 79, the notice of the resale failed to give the name of the owner, as required by law, and the title of the purchaser at the resale was sustained. But there the court rested its conclusion in part upon section 9, article 31, chapter 66, Laws of 1939, 68 O.S.A. 432h, which became effective long after the resales involved here. These notices, excluding those published in 1934 and 1935, were not merely inaccurate and incorrect. They were affirmatively misleading. Illustrative, the notice of sale in November, 1930, stated definitely that the lots would be sold for the ad valorem taxes and delinquent installments of assessment which became due in 1929, and that was not true in respect of the assessment. The installments due in 1929 were not involved in any manner in the proposed sale. Instead, those due in 1930 were involved and included, and yet the notice was entirely silent in respect of them. In other words, contrary to the notice, the sale was not made for the installments due in 1929; and likewise, contrary to the notice, it was made for the installments due in 1930. The defect was not merely an immaterial one of omission, inaccuracy, or variance. It was substantial and reasonably calculated to mislead owners or others having some right or interest in the property.

The misleading aspect of the notices related solely and only to the special assessments. It did not apply to the delinquent ad valorem taxes. And it is not contended that the resales were invalid in respect of the ad valorem taxes. Although the resales were valid as to the ad valorem taxes, since the notices of the

original sales were fatally defective in respect to the assessments, the lien securing the respective assessments was not extinguished or discharged by the resale.

■■ The notices of sale in November, 1934, and 1935, were free from the defect present in those for the previous years. But section 12753, supra, provides that real estate purchased by the county and not redeemed within two years may be resold. These resales were made less than two years after the original sales in 1934 and 1935, and therefore they were not effective, despite the accuracy of the notices. Criswell v. Hart, 155 Okl. 159, 8 P.2d 70. True, a county treasurer is authorized to sell at the resale for all delinquent taxes existing at that time, including those which became delinquent intermediate the original sale and the resale. Shnier v. Vahlberg, 188 Okl. 471, 110 P. 2d 593; Meyer v. Corn, Okl.Sup., 131 P. 2d 62. But that rule applies only where there was a valid original sale made more than two years prior to the resale, a condition not present here.

■ Defendants rely upon 68 O.S.A. §§ 452, 453. These are referred to as curative provisions. The first provides that a tax deed regularly executed by the county treasurer shall, in all suits and controversies relating to the rights of the purchaser, his heirs or assigns, constitute presumptive evidence inter alia that the property was duly advertised before being sold; and the second provides that the person desiring to set the deed aside must show clearly the entire failure to do some one or all of the things of which the deed is presumptive evidence. But here the several notices of sale in November, except those in 1934 and 1935, were defective. And where it affirmatively appears that a sale was not advertised substantially in the manner or for the length of time required by law, these statutory provisions are without effect. Welborn v. Whitney, supra.

■ In the second case, involving the property at Okeene, plaintiff and certain defendants signed and filed a written stipulation in which it was agreed among other things that the annual sales in November, 1933, 1934, and 1935, were regular in all respects. If the notice of sale in 1933 was regular in all respects, the resale in 1936, made more than two years thereafter, extinguished the special assessments due and delinquent up to that time

as well as the ad valorem taxes. Shnier v. Vahlberg, supra; Meyer v. Corn, supra. But the court relieved the defendants of the stipulation. In doing so, the court stated that both parties agreed in open court that it contained something which was untrue. Thereafter a formal hearing was had, the notices were introduced in evidence, and the court expressly found that the notice for 1933 recited that the property listed would be sold for the taxes for 1932, but that the delinquent installment for 1933 was included, not that for 1932. A court may in its sound discretion relieve against a stipulation entered into through mistake or misunderstanding of fact. First Nat. Life Assur. Society v. Farquhar, 75 Wash. 667, 135 P. 619; Assignment of Rich Hardware Co., 22 Ariz. 254, 196 P. 454; Kelty v. Fisher, 101 Or. 122, 199 P. 192; McCarthy v. Benedict, 90 Neb. 386, 133 N.W. 410; Bales v. Murray, 186 Iowa 649, 171 N.W. 747; Borgman v. Bultema, 212 Mich. 70, 179 N.W. 347; or entered into inadvertently, inadvisedly, or improvidently, where under all the circumstances its enforcement would work an injustice. Carnegie Steel Co. v. Cambria Iron Co., 185 U.S. 403, 441, 22 S.Ct. 698, 46 L.Ed. 968; Delaware, L. & W. R. Co. v. Yurkonis, 2 Cir., 220 F. 429; Brast v. Winding Gulf Colliery Co., 4 Cir., 94 F.2d 179; Laughlin v. Berens, 73 App. D.C. 136, 118 F.2d 193. It cannot be said that the court abused its discretion in relieving against this stipulation.

■ It is argued that the owner of paving bonds is not in position to complain in respect of a defect in the notice of sale. A special assessment secures the bonds, and the owners of the bonds are the beneficial owners of the lien. The due process clause in the Fourteenth Amendment interdicts the divestiture of title through a tax sale without some appropriate notice to the owner. Castillo v. McConnico, 168 U.S. 674, 18 S.Ct. 229, 42 L.Ed. 622; Dennis v. Robertson, 123 Va. 456, 96 S. E. 802. And it is settled law in Oklahoma that the owner of a mortgage lien on real estate has such an interest in it that due process requires notice to him of an application for a tax deed, and that the execution of such a deed without notice to him does not extinguish the lien. Foster v. Marshall, 141 Okl. 246, 284 P. 882. It therefore seems clear on apposite analogy that a special assessment lien is a valuable right of which the owner can-

not be deprived without some appropriate notice of the original sale, and that he can challenge a notice for want of legal effect.

The remaining question relates to the unsuccessful effort of certain defendants to invoke the provisions of the Occupying Claimants Act, 12 O.S.A. §§ 1481–1487. In the first case, the defendant Edsel pleaded that his predecessor in interest purchased at the tax resale four of the lots in controversy; that they were vacant at the time of the resale and were of the reasonable market value of $600; that after acquiring them from his predecessor, the defendant went into possession and has at all times since been in the quiet, open, and peaceable possession; and that, relying upon the validity of the resale tax deed, he placed thereon valuable and lasting improvements of the market value of $7,500. And in the second case, the defendants Edsel and Davidson & Case Lumber Company each interposed a substantially like application, differing only as to lots and value of improvements. In each instance the court concluded as a matter of law that the claimant was not entitled to the benefits of the act. Section 1481 provides that in all cases any occupying claimant in quiet possession of lands or tenements, under a sale for taxes authorized by law, shall not be evicted by one setting up and proving a better title until he has been paid the full value of all lasting and valuable improvements which he made thereon; section 1482 provides in substance that an occupying claimant holding possession of land directly or by succession under a certificate of sale for taxes or a tax deed shall be considered as having sufficient title to demand the value of improvements under the provisions of the article; and sections 1483 to 1487, inclusive, concern themselves with procedure. In Standifer v. Morris, 25 Okl. 802, 108 P. 413, 415, the action was to foreclose a mortgage given by Morris to Standifer. Morris had acquired the property by tax deed. Howard and his wife were joined as parties defendant for the purpose of foreclosing whatever interest they might have in the property; they answered claiming title to part of it; and Ella A. Foster intervened, setting up title to all of it. The tax deed under which Morris claimed was void, but the court determined that the mortgagee was entitled to the benefit of the statute, now section 1481, supra. In doing so, it was said:

"It has been held that: 'The adjustment of the rights of occupying claimants is a matter of equitable cognizance; and courts may, in addition to the relief provided by statute, and as supplementary thereto, make such orders as are equitable and just in matters not specifically provided for by the statute.' Mercer v. Justice, 63 Kan. 225, 65 P. 219; Cleland v. Clark, 123 Mich. 179, 81 N.W. 1086, 81 Am.St.Rep. 161. 'It is a well-settled principle of equity, moreover, that when a bona fide possessor of property makes meliorations upon it in good faith and under an honest belief of ownership, and the real owner is for any reason compelled to come into a court of equity for relief, that court, applying the familiar maxim that he who seeks equity must do equity, will compel him to pay for those improvements, as far as they are permanently beneficial to the estate and enhance its value.' Story on Equity Jurisprudence (—— Ed.) § 779; Pomeroy on Equity Jurisprudence (2d Ed.) § 1241. We think an application of the occupying claimant's act will work substantial justice between the parties to this suit, and that upon equitable grounds the decree of foreclosure entered in this case ought to be set aside and one entered giving the plaintiff the benefit thereof."

In Elerick v. Reed, 113 Okl. 195, 240 P. 1045, 1048, 44 A.L.R. 474, the court discussed the legislative purpose of the act, saying: "Section 473, supra [12 O.S.1941 § 1482] was enacted in the interest of equity and justice for the protection of rights as presented by this case. No one should be permitted to sit idly by, see their lands improved and benefited, and then reclaim their property as improved without just compensation. The act was intended for void tax deed claimants. Those who hold under valid tax deeds have no use for such a statute. When the sovereign creates and issues tax deeds as instruments of the system of tax collection, it is but reasonable and just that some fixed property rights be conveyed with the tax deeds; otherwise one holding under tax title would improve the property thus acquired at his peril, and consequently little if at all; society generally would be disturbed. Settled property rights can only bs secured by the enactment of such a policy as is contained in section 473, supra, wherein the state guarantees to the prospective purchaser at a tax sale that he may recover for all betterment to the real estate to be conveyed under a tax deed."

The act was taken from Kansas. See Elerick v. Reed, supra. The prototype of section 1481 was considered in Mercer v. Justice, 63 Kan. 225, 65 P. 219. That was an equitable action to foreclose a mortgage. Plaintiff joined Perkins as a party defendant, alleging in general language that he claimed some right or interest in the land, but that it was inferior and subject to the mortgage lien. Perkins answered, pleading title acquired by a tax sale, and in the alternative that if the tax deed be declared void before being evicted he be reimbursed for valuable improvements placed on the land. The court held the tax deed void; but, resting its action on the statute, provided in the decree that out of the proceeds of the sale Perkins be first reimbursed for the value of the improvements. And that case has been thrice cited with approval by the supreme court of Oklahoma. Standifer v. Morris, supra; Reuck v. Green, 84 Okl. 131, 202 P. 790; United Federal Savings & Loan Ass'n v. Johnson, 181 Okl. 328, 73 P.2d 846. It seems clear that these defendants, occupying and holding the lots under the tax deeds and having placed thereon valuable and permanent improvements, are entitled to invoke the provisions of the act. And to give them its benefits would not violate any rights of plaintiff and other owners of bonds. The act was in force and effect at the time the assessments were made and the bonds issued; and the bonds were therefore purchased with notice that in the event these facts should intervene, reimbursement for the value of the improvements might be appropriately exacted befor eviction of the claimants under foreclosure of the assessment lien. Having acquired the bonds with such notice, the owners cannot complain that the requirement of reimbursement before eviction would effect a wrongful diminution of their security.

In Number 2659, as between plaintiff and defendant Edsel, the judgment is reversed and the cause remanded for appropriate proceedings in the matter of adjusting the equities between the parties in accordance with the provisions of the Occupying Claimants Act; and as between all other parties, the judgment is affirmed. In Number 2660, as between plaintiff and defendants Edsel and Davidson & Case Lumber Company, the judgment is likewise reversed and the cause remanded for appropriate proceedings in the matter of adjusting the equities between the parties, respectively, in accordance with the provisions of such act; and as between all other parties, the judgment is affirmed. And in each case the costs are divided equally between plaintiff and defendants.

HUXMAN, Circuit Judge (dissenting).

This is not an attack on a tax sale by the owner of the property or by one who owns an interest therein, nor yet by one who claims a lien on the property adverse to the liens for the satisfaction of which the property was sold. Rather it is an attack by one who conducted the sale through his statutory agent for the satisfaction of his lien. We have the anomalous situation of a bondholder who has in effect sold the property through his statutory agent, the county treasurer, for the satisfaction of his lien, and presumably has received his share of the proceeds from the sale, who now complains of defects in his own sale and wants to sell the property again and receive the proceeds from this second sale while still retaining those from the sale which he claims was void. My attention has not been called to any case where one who received the proceeds of a tax sale has attacked the validity of his own sale. It may be that the notice of a tax sale could be so defective that in effect there was no sale, so that one entitled to receive the proceeds could challenge the sale and ask that the property be sold because in fact no sale had been had. But this is not such a case.

The notices of the so-called "November sales" were regular in every respect, with one exception. They were published for the required time, they correctly described the property, stated that it was for the delinquent taxes of the preceding year, and separately and accurately stated the amount of the general and special improvement taxes for which the sale was being held. But it is charged that the November, 1928 sale—using it as an illustration—stated that the property listed would be sold for the 1927 delinquent taxes, but that the delinquencies of special assessments for that year were not included, but that the delinquencies for 1928 were included, and that therefore the tax sale was void. But there were no 1927 delinquent assessments for which the property could have been sold at the November, 1928 sale, because if 1927 special

assessments were delinquent under the Oklahoma law they would have been included in the 1926 delinquent tax sale.

In Oklahoma, all general taxes become due and payable October 1 and are all delinquent by May 1 thereafter, 68 O.S.A. § 351, while special assessments become due and payable September 1, 11 O.S.A. § 105. It becomes the duty of the proper authority to certify delinquent special assessments to the county treasurer on or before September 15, who then places them on the following November tax sale. 11 O.S.A. § 106. The Oklahoma law requires that the notice of sale shall contain "a notification that all lands on which the taxes of such fiscal year remain due and unpaid will be sold, and of the time and place of the sale, and shall contain a list of the lands to be sold and the amount of taxes due." 68 O.S.A. § 382. Notice of the tax sale is not required for the benefit of those whose claim is satisfied from tax funds. "The purpose of the advertisement of a tax sale is to warn the owners and to apprise prospective purchasers of the property for sale. * * *" 61 C.J. p. 1181. In Chamberlain v. Davis, 130 P.2d 848, 850, the Oklahoma Supreme Court said: "The purpose of such a statute is two-fold, (1) to warn the owner that his property is to be sold so that he can prevent the sale by paying his taxes, and (2) to advise prospective purchasers so that they can investigate the property and determine whether they want to bid." Certainly the owner could not complain because the notice failed to state that the sale was for the 1928 delinquent assessments. The notice correctly described his land and stated accurately the exact amount of all taxes due. Neither could those entitled to the proceeds of the tax sale be heard to complain that the notice was so defective that prospective purchasers might be misled. It stated the date of the sale, the place of sale, the exact amount of taxes against the property, and correctly described the property to be sold. It contained all the elements necessary to have a sale under the most favorable conditions.

There is no specific statutory direction to the county treasurer requiring him to set out in the notice of sale the year of delinquent special assessments. The only direction is that they be placed upon the November delinquent tax list and collected as other delinquent taxes are collected.

Without reviewing them in detail, I think it may be fairly stated that the spirit of the Oklahoma decisions under their curative statute, 68 O.S.A. §§ 452, 453, is to disregard technical defects in tax sale proceedings and set such proceedings aside only when it appears that substantial injury might have resulted. In other words, the defect must be of such a nature as to be capable of injuring someone whose rights are adversely affected by the sale. In Henshaw v. Morris, Okl. Sup., 119 P.2d 85, property was sold to the county at a November, 1927, tax sale. It was subsequently sold the next year. The notice of the resale and the tax deed recited that the property was sold at the November, 1928, delinquent sale. In Chamberlain v. Davis, supra, a resale notice erroneously stated that the property was being sold to satisfy delinquent taxes for the years 1932 to 1935, inclusive. There were no 1933 delinquent taxes. This appears to me to be a much more serious defect than to correctly state the amount of delinquent special assessments but fail to give the year for which they accrued. Yet the Supreme Court in each of these cases held that the error was cured by the curative statute.

If any error in tax sale proceedings can be held to be harmless, then I fail to see how a less harmful error could occur than the omission of the year for which special assessment taxes accrued which were included in general tax sale, and the correct amount of which was listed.

I think the judgment should be reversed, with directions to enter judgment for appellants.