## MOLUMPHY v. McCULLOUGH et al.

### No. 3202.

Circuit Court of Appeals, Tenth Circuit.

Jan. 14, 1946.

Walter L. Gray and Henry G. Snyder, both of Oklahoma City, Okl., for appellant.

C. J. Brown, of Oklahoma City, Okl., for appellees.

Before PHILLIPS, BRATTON, and MURRAH, Circuit Judges.

PHILLIPS, Circuit Judge.

Molumphy brought this action against H. W. McCullough, William F. Vahlberg, county treasurer of Oklahoma County, Oklahoma, and Helen Nix, county clerk of Oklahoma County, Oklahoma, to quiet the title to a tract of land in Oklahoma County, Oklahoma, and to restrain the county officials from issuing, and McCullough from receiving, a tax deed for such land.

The land is embraced in Choctaw Drainage District No. 8. Drainage district bonds were duly issued. The owners of such bonds brought an action in the District Court of the United States for the Western District of Oklahoma, numbered 1749 Equity, against the board of county commissioners of Oklahoma County, the individual members of the board, the clerk, assessor, and treasurer of the county, respectively, and certain owners of land within the drainage district, not including Molumphy, for a judgment for the amounts due on the bonds for principal and interest and for a mandatory injunction to compel the levy and collection of the necessary assessments to pay such judgment. The trial court entered a judgment sustaining the validity of the bonds but denying injunctive relief. We affirmed that judgment and held that if the proper officials failed to levy and collect the taxes provided by §§ 13028, 13029, O.S.1931, 82 O.S.A. §§ 401, 402,[1] the bondholders would be entitled to the ancillary remedy of mandamus.[2]

At a tax resale in 1940 for general taxes for the years 1928 to 1935 and for installments of drainage assessments for the years 1929 to 1934, amounting to $1425.07, Molumphy purchased the land for $860.85,

---

[1] 82 O.S.A. §§ 401, 402, provide:

"401. When a final judgment shall be rendered in any Federal Court based on original bonds or original warrants, against the drainage district, or against the Board of County Commissioners of any county where the same should be paid by such drainage district, no execution shall issue upon such judgment, but a tax sufficient to pay the same shall be levied upon all the lands, properties, and corporate bodies theretofore found to be benefited and assessed for the construction of the improvement of such drainage district, sufficient to pay such judgment, interest thereon and costs, and same shall be collected as other taxes, and when collected shall be paid by the county treasurer to the judg-ment creditor in the same manner as judgments against the county are paid and satisfied."

"402. In levying the tax herein provided for, the county commissioners shall apportion same against the lands, properties and corporate bodies in said drainage district in proportion to the assessments for benefits theretofore made and confirmed for the construction of the improvements of the drainage district in the first instance so that each parcel, lot or tract of land or benefited corporate body or property shall pay its proper proportion of such judgment."

[2] See Board of County Com'rs of Oklahoma County v. Board of Finance, etc., 10 Cir., 100 F.2d 766.

and the county treasurer duly executed, acknowledged, and delivered to Molumphy a tax resale deed for the land. The drainage district installments for 1925 to 1928, inclusive, had been paid. 68 O.S.1941 § 432d provides that all property, with certain exceptions not here material, must be sold at resale for a sum not less than two-thirds of the assessed value of such real estate as fixed for the current fiscal year or for the total amount of taxes, penalties, interest, and costs due on such property, whichever is the lesser. The assessed value of the land and improvements thereon for the year 1940 was $1290. The amount paid, therefore, met the requirements of the above-mentioned statute.

The effect of the resale was to cancel all general taxes due on the property to and including 1939 and the unpaid drainage district installments.[3]

G. A. Nichols and others brought an action in the District Court of Oklahoma County, Oklahoma, against the board of county commissioners, the county treasurer and the county clerk of Oklahoma County, to enjoin the collection of the assessments. No owner of the land involved in this action was a party to that suit. On July 31, 1928, the state court adjudged the assessments void and enjoined the collection thereof. Thereafter, in the month of August, 1928, the judge of the court vacated its judgment and injunction. The judgment of vacation was affirmed by the Supreme Court of Oklahoma in Nichols v. Bonaparte, 171 Okl. 234, 42 P.2d 866. Thereafter, in the state court action Vahlberg, county treasurer, and Nix, county clerk, were substituted as parties defendant, and on February 16, 1939, an order was entered directing them to proceed with the orderly process of collection of the assessments on the lands in the drainage district. Thereafter, a judgment was entered in the state court action on December 29, 1939, in which it was recited that the proper officers of Oklahoma County had abandoned the prior proceedings, assessments, and taxes and substituted new and different proceedings and levies therefor, pursuant to the judgment in Number 1749 Equity and ch. 70, O.S.L.1939, 82 O.S.1941 § 401 et seq., and adjudged that the original levies and drainage taxes already assessed on the property should be canceled and the county officials and their successors should be permanently enjoined from spreading the same upon the tax rolls, or seeking to collect same.

The land was advertised for sale in the delinquent tax sale of 1941 for taxes for the year 1940 in the amount, including interest, penalties, and costs, of $375.18. The advertisement of the tax sale with respect to these lands recited such items as follows: General taxes, 1940, $343.40; interest, penalties, and costs, $32.78; total, $375.18.

At such delinquent tax sale the land was bid in for Oklahoma County by the county treasurer for lack of other bidders. The county's certificate was assigned to McCullough on May 15, 1944, upon payment by him of the amount of the certificate, plus interest, penalties, and costs aggregating $479.14, and the payment by McCullough of $128.30, taxes for 1939, plus interest, penalties, and costs, and $413.71, taxes for 1941, plus interest, penalties, and costs.

Molumphy challenges the validity of certain of the taxes included in the tax sale to the county, the certificate of which was assigned to McCullough. We do not think it is possible on this record to determine the legality of the taxes for which the property was sold to the county in 1941. The trial court did not undertake to do so. In accordance with the adjudicated cases in Oklahoma,[4] it held that Molumphy's remedy was to pay the taxes under protest and sue to recover the same pursuant to 68 O.S.1941 § 15.50, and that she could not in the present proceeding attack the validity of the tax sale to the county or of the certificate assigned to McCullough, and dismissed the action.

In Henshaw v. Morris, 189 Okl. 603, 119 P.2d 85, 86, 87, Morris brought an action against Henshaw to quiet title. Henshaw's claim of title was based on a tax deed from Okmulgee County. The court said:

"Assuming the correctness of the contention of the plaintiff that there were some illegal items in the tax levies for which the property was sold, it does not

3 Bradford v. Schmucker, 10 Cir., 135 F.2d 991, 994.

4 Henshaw v. Morris, 189 Okl. 603, 119 P.2d 85, 86, 87; Cheney v. Cox, 125 Okl. 108, 256 P. 755, 757; Blake v. Young, 128 Okl. 153, 261 P. 923, 925; Payne v. Jones, 193 Okl. 609, 146 P.2d 113, 117; Grubb v. Smiley, 140 Okl. 233, 283 P. 784, 786.

follow that the tax title held by Okmulgee County, and conveyed to Henshaw, is thereby rendered invalid. The questioned levies are for the fiscal years 1925–1926, 1926–1927, and 1927–1928. It, therefore does not appear that any of them were made after August 7, 1928, the effective date of section 12306, O.S.1931, 68 Okl.St.Ann. § 332. Section 12665, O.S.1931, 68 Okl.St. Ann. § 263, however, was then in force, and it afforded the aggrieved taxpayer an exclusive remedy against an illegal tax levy. It was to timely pay the tax and sue to recover the illegal portion. The plaintiff could not question the validity of the levy by an attack upon the tax sale. See Cheney v. Cox, 125 Okl. 108, 256 P. 755."

The judgment is affirmed.